NOTICE

Decision filed 12/16/16. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2016 IL App (5th) 160038

NO. 5-16-0038

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| MIDLAND FUNDING LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-L-200 |
| | ) | |
| MELISSA HILLIKER, | ) | Honorable |
| | ) | Christopher T. Kolker, |
| Defendant and Counterplaintiff-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Presiding Justice Schwarm[*] and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-counterdefendant, Midland Funding LLC, appeals the circuit court's order denying its motion to compel arbitration of a counterclaim filed by defendant-counterplaintiff, Melissa Hilliker. For reasons that follow, we affirm.

¶ 2                          BACKGROUND

¶ 3    Defendant-counterplaintiff, Melissa Hilliker, obtained a credit card from Chase Bank USA, N.A. (Chase Bank) in April 2001. Hilliker was provided with a specified line

_____

[*]Presiding Justice Schwarm fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6, 605 N.E.2d 544 (1992).

1

of credit for consumer purchases, wherein she agreed to make at least the minimum payment shown on her monthly billing statement.

¶ 4 On September 9, 2013, plaintiff-counterdefendant, Midland Funding LLC (Midland), a company in the business of purchasing outstanding consumer debt, filed a complaint against Hilliker in the circuit court of St. Clair County. Midland alleged that it was the successor in interest to Hilliker's Chase Bank account; that Midland had purchased Hilliker's credit card account from Chase Bank in the regular course of business in good faith and for value; that there was an unpaid balance of $8,809.38 due on Hilliker's account; that because Hilliker had failed to make the monthly payments due on the account, Hilliker was in default on the account; and that Midland was entitled to a judgment for the unpaid balance, plus costs.

¶ 5 In support of its complaint, Midland attached the "Affidavit of Kory Holst In Support Of Judgment." In the affidavit, Holst stated that he was a "Legal Specialist," who had access to "pertinent account records for Midland Credit Management, Inc. ('MCM')," the entity servicing this account on behalf of Midland. Holst further stated that he was making the statements contained in his affidavit based upon personal knowledge. Holst averred he had reviewed MCM's account records; that he was familiar with, and trained in, the methods by which MCM created and maintained its records; and that MCM's records were kept in the ordinary course of its business. Based on his personal knowledge of the MCM account records, Holst asserted that Midland was the "current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title, and interest" in Hilliker's credit card account with Chase Bank. Holst stated

2

that MCM's records showed that Hilliker opened her account with Chase Bank on April 23, 2001; that her last payment was posted on January 13, 2009; that the account was charged off on August 31, 2009; and that Hilliker owed $8,809.38 as of July 15, 2013. Midland did not provide any records documenting the sale of Hilliker's debt, or the terms of the assignment of that debt, in support of the Holst affidavit or the complaint. Contrary to section 2-606, Midland did not provide a copy of any written instrument upon which they based their claim for the debt, nor did they attach an affidavit indicating that the written instrument evidencing the debt was not accessible to it. 735 ILCS 5/2-606 (West 2012).

¶ 6     Midland's complaint was automatically assigned to the St. Clair County circuit court's arbitration docket because the amount in controversy was between $5,000 and $50,000, exclusive of costs and interest. 20th Judicial Cir. Ct. Mandatory Arb. Rs. (eff. Aug. 2, 2004) (Civil Actions Subject to Mandatory Arbitration, describing St. Clair County provisions pursuant to Ill. S. Ct. R. 86 (eff. Jan. 1, 1994)). This arbitration docket is a nonbinding, court-annexed arbitration docket and is a part of the Illinois judicial system. See generally Ill. S. Ct. Rs. 86 to 95 (rules regarding arbitration). Thus, the provisions of the Illinois Code of Civil Procedure and the rules of the Illinois Supreme Court are applicable to the arbitration proceedings, except where specific arbitration rules otherwise provide. See Ill. S. Ct. R. 86.

¶ 7     On October 14, 2013, Hilliker filed an answer to Midland's complaint, denying the main allegations, including the allegation that Midland was the successor in interest to the Hilliker account. Hilliker also filed a counterclaim. Therein, she alleged that

3

Midland's complaint violated the Illinois Collection Agency Act (Collection Agency Act) (225 ILCS 425/1 *et seq.* (West 2012)), because Midland failed to attach the proper documents, including the assignment documents, to its complaint. She also alleged that in violating provisions of the Collection Agency Act, Midland also violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2012)). Hilliker sought damages, including filing fees, attorney fees, penalties, and punitive damages.

¶ 8     On November 4, 2013, Midland filed a motion to dismiss Hilliker's counterclaim. Midland asserted that the counterclaim should be dismissed pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)), because it failed to set forth sufficient factual allegations to state a legally recognized cause of action, failed to set forth a proper prayer for relief, and was not verified. Midland also asserted that Hilliker's counterclaim should be dismissed under section 2-619 of the Code (735 ILCS 5/2-619 (West 2012)). Midland asserted that it was the owner of Hilliker's debt, and that the assignment for collection criteria in section 8b of the Collection Agency Act (225 ILCS 425/8b (West 2012)) did not apply to debt owners, such as Midland. Midland argued that the counterclaim was insufficient in law and should be dismissed because it was not possible for Midland to have violated the Collection Agency Act as alleged. Midland also filed a motion to strike Hilliker's answer because it was not verified.

¶ 9     The parties appeared for a status hearing on January 16, 2014. On that date, Hilliker was allowed to file an amended counterclaim. In the first amended counterclaim,

4

Hilliker alleged that Midland did not own Hilliker's debt because the claimed assignment from Chase Bank to Midland was legally defective. Hilliker further alleged that Midland violated the Collection Agency Act by filing suit, and attempting to collect a debt that it did not own, and that Midland violated the Consumer Fraud Act in that it violated the Collection Agency Act.

¶ 10 On February 18, 2014, Midland filed a motion for involuntary dismissal of the first amended counterclaim with prejudice under section 2-619 of the Code and alleged that the counterclaim was insufficient in law. Midland asserted that the Holst affidavit was sufficient verification that it owned Hilliker's debt and was appended to verify the allegations in the complaint. In its motion to dismiss, Midland also attached an unverified document titled "Bill of Sale." The "Bill of Sale" stated in part that "Chase Bank USA, N.A. ('Seller') for value received and pursuant to the terms and conditions of Credit Card Account Purchase Agreement dated May 8, 2009[,] between Seller and Midland Funding LLC ('Purchaser'), *** hereby assigns effective as of the File Creation Date of September 8, 2009, all rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in Exhibit 1 attached hereto and made part hereof for all purposes." Notably, Midland did not attach a copy of Exhibit 1, as referenced in the Bill of Sale, and did not attach a copy of the Credit Card Account Purchase Agreement referenced in support of its motion to dismiss. In fact, Midland did not attach any documents identifying the particular accounts purchased or the terms of the assignment.

¶ 11    On October 3, 2014, Hilliker filed a motion to compel Midland to respond to interrogatories and a request for production that had been served by Hilliker on April 23, 2014. Hilliker's counsel alleged that despite counsel's efforts to comply with Illinois Supreme Court Rule 201(k) (eff. July 1, 2014), including having a telephone conference with counsel for plaintiff-counterdefendant, Midland refused to respond to any of Hilliker's discovery requests. Midland filed no response in defense of Hilliker's motion. The motion to compel was heard on October 7, 2014. Following the hearing, the trial court entered an order granting Hilliker's motion to compel, over Midland's objection. The court ordered Midland to answer the outstanding discovery within 60 days. According to a certificate of service in the record, Midland sent its responses to Hilliker's interrogatories and request for production on December 8, 2014, the last day allotted by the court's order.

¶ 12    On December 16, 2014, Hilliker filed a second motion to compel, and alleged that Midland had responded to the discovery requests with answers that were mostly nonresponsive, with the vast majority of the answers consisting of objections and "with very few answers to the discovery." Following a hearing on January 8, 2015, the court entered an order directing Midland to answer the interrogatories and requests for production, without objections and within 30 days of the order. A status hearing was scheduled for March 5, 2015.

¶ 13    On February 9, 2015, the thirtieth day allowed for by the court's prior order, Midland filed a motion for a protective order with regard to Hilliker's request that Midland produce the entire debt purchase agreement with Chase Bank. Midland argued

that the agreement contained information which was confidential or proprietary in nature and contained other information that was not relevant to the issue of Midland's ownership of the Hilliker account. Midland sought to produce a copy of the debt purchase agreement under seal and to redact all financial information and all information regarding consumers other than Hilliker. According to a certificate of service in the record, Midland sent responses to Hilliker's interrogatories and requests for production to Hilliker on February 11, 2015.

¶ 14 During the status hearing on March 5, 2015, Hilliker filed a motion to amend her counterclaim. The motion was granted over Midland's objection, and the second amended counterclaim, erroneously captioned "Third Amended Counterclaim," was filed that day (hereinafter referred to as the third amended counterclaim).

¶ 15 In the third amended counterclaim, Hilliker again alleged that Midland did not own the debt sued upon because the purported assignment was defective. Hilliker further alleged that the debt buyers were subject to all of the requirements of the Collection Agency Act, including the requirement that they purchase a debt before they attempt to collect that debt, and that Midland violated section 9 of the Collection Agency Act (225 ILCS 425/9 (West 2012)) by filing suit to collect a debt that it did not own. Hilliker also alleged that Midland's complaint and affidavit contained misleading statements regarding the assignment and ownership of accounts and that Holst's affidavit was misleading because it was not based on his own personal knowledge. Hilliker claimed damages in excess of $50,000, as she sought to represent a class of similarly situated residents of Illinois. The third amended complaint also contained a count alleging violations of the

7

Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. §§ 1692 *et seq.* (2012)). In support of her claim under the FDCPA, Hilliker relied on the same factual allegations alleging the use of misleading statements, as plead previously.

¶ 16   On March 26, 2015, Hilliker filed a motion for sanctions. Once again, Hilliker claimed that Midland had failed to comply with the court's order of January 8, 2015. Specifically, Hilliker's counsel claimed that the answers provided to Hilliker's discovery "were non-responsive to the questions contained in the discovery." Hilliker alleged that Midland had displayed "continued disrespect" for the court's authority and requested sanctions.

¶ 17   Also on March 26, 2015, Hilliker filed a motion to compel the deposition of Kory Holst, the affiant who had attested to Midland's original complaint. In this motion, Hilliker alleged that her counsel had made repeated calls and requests for dates to take the deposition of Holst, but the "calls and requests have gone unanswered." Additionally, Hilliker filed a motion to transfer the case to the "L" docket, because the amount requested in her counterclaim exceeded the jurisdictional limit of the arbitration docket.

¶ 18   On March 26, 2015, Midland obtained new counsel, as reflected by an entry of appearance filed that date. Midland also filed a motion to dismiss the third amended counterclaim and to compel arbitration pursuant to the terms of the Chase Bank "Cardmember Agreement." In its motion, Midland argued that Hilliker had drastically altered the scope of her claim when she filed the third amended counterclaim and sought, for the first time, "to certify a nationwide class for violations of the FDCPA and a statewide class action for violations of the [Collection Agency Act] and the [Consumer

8

Fraud Act].” In anticipation of Hilliker's arguments, Midland claimed that it had not waived its right to arbitrate, as it had filed the case in the “arbitration court, thereby asserting its contractual rights under the Arbitration Agreement.” Further, Midland argued that even if the court found that its actions in the trial court constituted waiver, the court should permit Midland to rescind the waiver because of the significant changes in the third amended counterclaim. Midland also argued that the third amended counterclaim should be dismissed because the allegations regarding the assignment and ownership of the Hilliker account fell within the scope of the arbitration agreement and because the arbitration agreement contained a class waiver provision. Finally, Midland indicated that it had sent a letter to Hilliker's attorneys on March 25, 2015, advising them of Midland's intent to arbitrate.

¶ 19   In support of its arguments, Midland attached the declaration of Kyle Hannan, the manager of operations for Midland Credit Management, who claimed that the Hilliker account had been properly assigned and that Midland owned that debt. A number of documents were attached to and referenced in Hannan's affidavit, including an affidavit and a copy of a Chase Bank Cardmember Agreement. The affidavit of Christine L. Sallie, a “CSD Strategy Analyst” affiliated with Chase Bank, stated that Chase Bank sold off a pool of accounts to Midland in September 2009. Sallie did not identify the Hilliker account, or any other specific account, within the pool of accounts sold, and she provided no information regarding the specific nature of the assignment from Chase Bank to Midland. Hannan's affidavit indicated that the Chase Bank Cardmember Agreement, purportedly issued with Hilliker's account, was “difficult to read due to poor copying and

font size." Hannan further explained that in order to clarify the terms of the Cardmember Agreement, an exemplar of the Cardmember Agreement, containing larger type, known as a portfolio-level Cardmember Agreement had to be consulted. Hannan further explained that these portfolio-level agreements serve as exemplars, and, when read in conjunction with the Cardmember Agreement, make the arbitration agreement readable. Once legible, it appeared the arbitration agreement contained a provision prohibiting class-action arbitration. According to the portfolio-level exemplar, the arbitration paragraph also contained an exception that allowed a party to pursue an action in small claims court on an individual basis. There were no documents appended to Hannan's affidavit or Midland's motion identifying the assignment or specific terms of sale from Chase Bank to Midland regarding Hilliker. There was no Cardmember Agreement signed by Hilliker or any document containing Hilliker's consent to arbitration.

¶ 20    On April 6, 2015, Midland filed its opposition to the motion to transfer the case to the "L" docket. On April 9, 2015, the court granted the motion to transfer the case to the "L" docket and continued all pending motions until reassignment of the case.

¶ 21    On July 10, 2015, Midland filed a motion to stay discovery pending resolution of its March 26, 2015, motion to dismiss and compel arbitration. Two months later, on September 4, 2015, Midland filed responses in opposition to Hilliker's motion to compel the deposition of Kory Holst and her motion for sanctions.

¶ 22    On September 8, 2015, Hilliker filed a response in opposition to Midland's motion to compel arbitration. Hilliker argued that Midland had waived its right to arbitrate when it elected to file its original complaint in a judicial forum and thereafter participated in

litigation of the case in that forum. Hilliker claimed that Midland's demand for arbitration was untimely. She pointed out that Midland's first notice of intent to arbitrate was made to Hilliker's counsel on March 25, 2015, approximately 18 months after it filed its original complaint and only after Hilliker filed her third amended counterclaim. Hilliker argued that Midland's actions in the court were inconsistent with a party seeking to arbitrate its claim and that Midland had not overcome the rebuttable presumption that attaches when a party chooses to proceed in a judicial forum. Specifically, Hilliker argued that Midland's choice of the St. Clair County circuit court raised a rebuttable presumption that Midland had waived its right to arbitrate, and Midland had not overcome that presumption. Hilliker further argued that the court should not allow Midland to change its mind and arbitrate, after months of "dragging its heels." Hilliker also claimed that Midland's untimely delay in demanding arbitration and filing a motion to stay discovery caused her prejudice, as she had expended significant time and effort litigating Midland's motions to dismiss and her motions to compel discovery, and that she incurred significant costs associated with filing fees and attorney fees.

¶ 23   On September 18, 2015, Midland filed a reply in support of its motion to compel arbitration. Midland argued that it did not substantially invoke the judicial process by filing the original collection action seeking limited relief in the trial court. Midland claimed that its participation in the litigation was "minimal," noting that it only filed a complaint and two motions to dismiss, and that it only answered discovery after being compelled to do so. Midland concluded that its decision to pursue a summary action for limited relief in the court, coupled with its limited participation in the proceedings, did

11

not amount to a waiver of its right to arbitrate. Midland claimed that its demand for arbitration was timely and that there was no prejudice to Hilliker. Midland further argued that that even if the court found waiver, the court should permit it to resuscitate its right to arbitrate because Hilliker dramatically changed the nature of the litigation by filing the third amended complaint, which exposed it to substantial liability. Midland also reasserted its claims that Chase Bank properly assigned the Hilliker account and that the arbitration agreement was enforceable.

¶ 24　Midland's motion to dismiss the counterclaim and to compel arbitration was called for hearing on December 14, 2015. After considering the arguments of counsel, the trial court denied the motion. In a written order entered December 30, 2015, the court determined that Midland waived its right to arbitrate due to its substantial participation in the litigation. The court also determined that provisions in the arbitration agreement were unconscionable and that the agreement was unenforceable. Finally, the court denied Midland's motion to dismiss the counterclaim on grounds of legal insufficiency. The court found that Midland had not presented sufficient evidence to show that it owned the Hilliker account and debt. Midland appealed.

¶ 25　　　　　　　　　　　　　DISCUSSION

¶ 26　This appeal is taken from the denial of a motion to compel arbitration. Ill. S. Ct. R. 307(a)(1) (eff. July 6, 2000). Where an interlocutory appeal is taken pursuant to Supreme Rule 307(a)(1), controverted facts or the merits of the case are not decided. *Woods v. Patterson Law Firm*, *P.C.*, 381 Ill. App. 3d 989, 993, 886 N.E.2d 1080, 1084 (2008). The only question is whether there was a sufficient showing to affirm the trial court's decision

to deny the motion to compel arbitration. *Woods*, 381 Ill. App. 3d at 993, 886 N.E.2d at 1084. The standard of review is dictated by the nature of the question presented to the trial court. *LAS, Inc. v. Mini-Tankers, USA, Inc.*, 342 Ill. App. 3d 997, 1001, 796 N.E.2d 633, 636 (2003). In this case, the trial court was called upon to determine as a matter of law whether Midland's participation in the litigation constituted a waiver of the right to arbitrate. This presents a legal question that is subject to *de novo* review. *LAS, Inc.*, 342 Ill. App. 3d at 1001, 796 N.E.2d at 636.

¶ 27 Generally, Illinois considers arbitration to be a favored method of settling disputes. *Kostakos v. KSN Joint Venture No. 1*, 142 Ill. App. 3d 533, 536, 491 N.E.2d 1322, 1325 (1986). That said, the right to arbitrate a dispute, like all other contract rights, is subject to waiver. *Woods*, 381 Ill. App. 3d at 994, 886 N.E.2d at 1085. A party may waive the right to arbitrate when its conduct is inconsistent with the arbitration clause, thereby demonstrating that it has abandoned the right to arbitrate. *Kostakos*, 142 Ill. App. 3d at 536, 491 N.E.2d at 1325. Thus, waiver will be found where the party seeking to compel arbitration invokes the judicial process and substantially participates in the litigation to a point inconsistent with an intent to arbitrate, to the detriment or prejudice of the other party. *Woods*, 381 Ill. App. 3d at 994, 886 N.E.2d at 1085; *LAS, Inc.*, 342 Ill. App. 3d at 1002, 796 N.E.2d at 637. Whether a party's conduct results in waiver depends on the unique facts and circumstances present in a particular case. *LAS, Inc.*, 342 Ill. App. 3d at 1002, 796 N.E.2d at 637.

¶ 28 In this particular case, it is the plaintiff who, after filing suit and pursuing its claim in the circuit court for 18 months, now seeks to arbitrate. Midland filed the original

13

complaint, together with a supporting affidavit, and sought a judgment against Hilliker without demanding binding arbitration. Hilliker then filed an answer denying the allegations in Midland's complaint. Additionally, she filed a counterclaim challenging Midland's claim that Hilliker's account was among those sold and assigned to it by Chase Bank. Midland responded with a motion to dismiss Hilliker's counterclaim with prejudice, alleging it was legally insufficient, and a motion to strike Hilliker's answer and to enter a judgment in its favor. Midland did not demand that the court stay the proceedings to allow Midland to arbitrate the counterclaim. When Hilliker filed her first amended counterclaim, Midland again responded with a motion to dismiss on grounds of legal insufficiency, and sought a judgment in its favor. Again, it did not move to stay the proceedings or demand arbitration pursuant to any Cardmember Agreement. In fact, Midland did not even raise the existence of the agreement until it filed its motion to compel arbitration, 1½ years after Midland filed its complaint in the circuit court. Moreover, on two separate occasions, Midland was ordered to respond to discovery. Despite these court orders, Midland did not move to stay the discovery or request arbitration. Instead, after months of foot dragging, it engaged the trial court, asking for a judicial order of protection.

¶ 29    The record shows that Midland actively and substantially participated in the proceedings in the circuit court, including the filing of dispositive motions in an attempt to defeat the counterclaims and to secure a judgment on the pleadings, without ever requesting arbitration or a stay of the proceedings. Midland even took advantage of its right under the rules of civil procedure to request a change of judge after the case was

14

transferred to the "L" division over Midland's objection. Midland repeatedly sought a substantive judicial determination of a disputed issue and a judicial termination of the litigation.

¶ 30     Midland argues that its intent was to pursue a summary action for limited relief in the circuit court, but does not explain how such relief could be granted in summary fashion. Further, Midland claims that its intent to arbitrate was illustrated by having filed its complaint in the "arbitration court" of St. Clair County. These arguments are disingenuous, at best. As noted previously, St. Clair County has a nonbinding arbitration court that was approved by the Illinois Supreme Court. A case is assigned to the arbitration docket based upon the value of the claim asserted. The parties to the litigation are required to participate in arbitration whether there was an agreement to do so or not. Therefore, Midland's claim that it did not waive its right to arbitrate based upon its participation in the St. Clair County arbitration court is without merit. The record supports the trial court's determination that Midland's actions in the judicial forum were inconsistent with those of a party intent on asserting its right to arbitrate and evidenced a clear abandonment of that right.

¶ 31     Midland contends that even if the trial court found a waiver of a right to arbitrate, the court should have permitted it to rescind the waiver because the third amended counterclaim significantly altered the nature of the litigation. We do not agree. In this case, the original action filed by Midland and the counterclaims filed by Hilliker, including the third amended counterclaim, arose out of the same dispute and required consideration of many of the same issues regarding the assignment of Chase Bank's

customer accounts and debts to Midland. Additionally, the factual allegations and issues raised in the third amended counterclaim were similar to those asserted in the original and first amended counterclaim. The count alleging a violation of the FDCPA involved the same, basic factual allegations as the counts alleging violations of the Collection Agency Act and Consumer Fraud Act. While the request for class status was new, the basic factual allegations and claims made in third amended counterclaim were not.

¶ 32    The significant change in the third amended complaint was not in the nature of the factual allegations, but rather, as Midland candidly acknowledged, with its potential exposure in a class action suit. Midland has not suggested that the request for class certification was unexpected or unforeseeable. As noted by the trial court, Midland is not an unsophisticated litigant. The record shows that Midland continued to attack the legal sufficiency of the allegations in the third amended complaint and seek a judgment in its favor, even after it moved to compel arbitration. Midland's actions did not constitute limited legal maneuverings. After reviewing the record, we do not find that the third amended counterclaim so drastically altered the nature of the litigation or raised complex claims that could not have been foreseen, when Midland filed its complaint. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995). The procedural history of this case indicates that Midland was quite content to proceed with a judicial determination of the issues until it decided that it would be better off in arbitration. Selection of a forum in which to resolve a legal dispute should be made at the earliest opportunity. The failure of a party to move promptly for arbitration is compelling evidence of its election against arbitration and that election should be binding, except in

the case of extraordinary circumstances. *Cabinetree*, 50 F.3d at 391. This case does not present such extraordinary circumstances. The trial court did not err in denying that portion of Midland's motion seeking rescission of its waiver of arbitration.

¶ 33 Where the court considers a party's waiver of its right to seek arbitration, Illinois law requires that the court next consider whether the delay in seeking arbitration caused any prejudice to the party opposing arbitration. *Kostakos*, 142 Ill. App. 3d at 537, 491 N.E.2d at 1325. Therefore, we consider whether Hilliker was prejudiced by the belated demand for arbitration. The record shows that Hilliker filed several pleadings, including an answer, counterclaims, and motions to compel discovery. Her counsel made repeated attempts under the rules to persuade Midland to comply with discovery, but it outright refused. When doing so, it did not respond with a motion to stay discovery. Midland simply offered no excuse for its failure to answer discovery until Hilliker filed a motion for sanctions. Even then, Midland did not file a motion to stay discovery but sought protection from the court by filing a motion for a protective order. Additionally, the court continued to hold status conferences and hearings, all of which were attended by Midland and Hilliker's counsel. The record on appeal demonstrates that Hilliker's counsel expended considerable resources in terms of time and attorney fees. Hilliker also incurred filing fees and costs. Very few of these resources would have been expended in arbitration had Midland not delayed in its quest to seek an arbitral forum. Therefore, we believe that the record supports a finding that Hilliker was prejudiced by Midland's substantial participation in the litigation and its delay in demanding arbitration. Finally, we find there is no basis upon which the trial court should resuscitate Midland's right to

17

seek arbitration. The allegations made in the third amended counterclaim were not significantly different than those raised by Hilliker's original and first amended counterclaim. There was simply no sea change that allowed Midland the right to rescind its waiver of arbitration.

¶ 34                                  CONCLUSION

¶ 35    After reviewing the record, we find that Midland waived its right to compel arbitration by filing the original action and subsequently filing pleadings that presented substantive issues for a determination by the trial court. Midland's extensive participation in the litigation process, coupled with its delay in raising the existence of the Chase Bank Cardmember Agreement and its demand for arbitration and the resulting prejudice to Hilliker, amount to a waiver of arbitration. Midland's conduct was inconsistent with the actions of a party seeking to compel arbitration and demonstrated a clear abandonment of any claimed right to arbitration. The trial court did not err in denying Midland's motion to compel arbitration. Because our resolution of the waiver issue is dispositive, we need not address the remaining claims of error regarding the validity, unconscionability, and enforceabililty of the arbitration agreement in the Chase Bank Cardmember Agreement. Finally, we will not address the propriety of the trial court's order denying Midland's section 2-619 motion to dismiss the third amended counterclaim for legal insufficiency, as it is not a final and appealable order. *Cabinet Service Tile, Inc. v. Schroeder*, 255 Ill. App. 3d 865, 627 N.E.2d 253 (1993).

¶ 36    Accordingly, the order of the circuit court denying Midland's motion to compel arbitration is affirmed, and the cause is remanded for further proceedings.

18

¶ 37　Affirmed; cause remanded.

2016 IL App (5th) 160038

NO. 5-16-0038

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| MIDLAND FUNDING LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-L-200 |
| | ) | |
| MELISSA HILLIKER, | ) | Honorable |
| | ) | Christopher T. Kolker, |
| Defendant and Counterplaintiff-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed:**          December 16, 2016
_____

**Justices:**          Honorable Judy L. Cates, J.

                 Honorable S. Gene Schwarm, P.J., and
                 Honorable Richard P. Goldenhersh, J.,
                 Concur

_____

**Attorneys          Heather L. Kramer, Jennifer A. Warner, Dykema Gossett PLLC,
for               10 South Wacker Drive, Suite 2300, Chicago, IL 60606; Theodore
Appellant**          W. Seitz, Dykema Gossett PLLC, Capitol View, 201 Townsend
                 Street, Suite 900, Lansing, MI 48933

_____

**Attorneys          James R. Williams, Ashley P. Cook, Williams, Caponi &
for               Associates, P.C., 30 East Main Street, P.O. Box 565, Belleville, IL
Appellee**          62220

_____