2023 IL App (1st) 230437-U

FIRST DIVISION
November 6, 2023

No. 1-23-0437

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JUNE BEECHAM, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 22 CH 1145 |
| LAKEVIEW LAW GROUP OF SONNY S. SHALOM, | ) | |
| P.L.L.C., | ) | Honorable |
| | ) | Cecilia A. Horan, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Coghlan concurred in the judgment.

**O R D E R**

¶ 1  *Held*: The circuit court properly denied the defendant's motion to compel arbitration. The defendant waived its right to arbitration by filing a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2018)), which asked the circuit court to rule on a substantive issue in the case.

¶ 2  In this interlocutory appeal, the defendant Lakeview Law Group of Sonny S. Shalom,

P.L.L.C. appeals from the circuit court's order denying its motion to compel arbitration of the class

action lawsuit filed against it by the plaintiff, June Beecham. The defendant contends that the circuit court erred when it found that by simultaneously filing a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2018)) the defendant waived its right to arbitration. For the following reasons we affirm.

¶ 3                                    II. BACKGROUND

¶ 4      This matter arises from a dispute between the plaintiff and the defendant over debt relief services provided by the defendant to her. On February 10, 2022, the plaintiff filed the instant class action lawsuit on behalf of a putative class of similarly situated individuals, alleging that the defendant violated two Illinois consumer protection statutes: (1) the Debt Settlement Consumer Protection Act (225 ILCS 429 *et seq*. (West 2018)) (DSCPA); and (2) the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505 *et seq*. (West 2018)) (CFA). The complaint alleged that after receiving the defendant's advertisements in the mail, the elderly plaintiff, who was having trouble paying her bills, contacted the defendant to obtain its debt settlement services. Unbeknownst to the plaintiff, however, the defendant was not a licensed debt settlement provider as required under the DSCPA (225 ILCS 429/125 (West 2018)). Instead, according to the complaint, while the defendant pretended to be a law firm, it did not employ any Illinois licensed attorneys and did not provide any legal services to its clients, but instead acted as a front for "an otherwise illegal debt settlement operation."

¶ 5      The complaint alleged that in contravention of the DSCPA the defendant failed to provide the defendant with the requisite disclosures regarding its business practices in soliciting her as a client and then made false and misleading statements to her about the services to be performed. See 225 ILCS 429/115, 145 (West 2018). Specifically, according to the complaint, after the plaintiff initially spoke to the defendant's "client support" representatives, she was told that the

defendant would be able to negotiate her bills such that she would have to pay only a fraction of what she owed. The plaintiff subsequently received a letter from an attorney identifying himself as "Ira Fraizer," but never spoke with him. After the plaintiff agreed to hire the defendant, the defendant sent a notary public to the plaintiff's house to have her review and sign documents relating to its debt settlement services. Once the defendant's services were engaged, its agents told the plaintiff to stop paying all of her creditors and bills, even on lines of credit that were current. The defendant's agents also told the plaintiff to cease all communication with her creditors and to have all statements sent directly to the defendant's office. When the plaintiff expressed concern that failing to pay her bills would cause additional damage to her credit score, or that she might be sued by a collection agency, the defendant's agents informed her that her score would be decreased only for a few months while they negotiated a settlement with her creditors and that it would subsequently increase above to where it was before.

¶ 6     In the meantime, according to the complaint, the defendant continued to charge the plaintiff numerous illegal fees in contravention of the DSCPA. 225 ILCS 429/125 (West 2018).

¶ 7     Ultimately, the complaint alleged, the defendant failed to deliver the promised debt settlement services to the plaintiff and instead caused her credit rating to decline and her financial situation to deteriorate. Specifically, as a result of the defendant's actions, the plaintiff ended up being sued by a creditor for over $35,000. The defendant then did nothing to represent the plaintiff in court, requiring her to obtain legal counsel elsewhere at considerable personal expense.

¶ 8     The complaint acknowledged that the written agreement that was signed by the plaintiff in obtaining the defendant's services contains an arbitration clause, a class action waiver, and a choice of law provision, but nonetheless asserted that these provisions were unenforceable because the agreement itself was made by an unlicensed debt settlement service and was therefore void under

the DSCPA. See 422 ILCS 429/80 (West 2018) ("any contract of debt settlement service as defined in this Act made by an unlicensed person shall be null and void and of no legal effect.").

¶ 9     The complaint therefore sought, *inter alia*: (1) certification of the proposed class with the plaintiff as the designated representative; (2) compensatory and punitive damages; and (3) attorneys' fees and costs.

¶ 10     In response, on May 19, 2022, the defendant filed a section 2-619(a)(9) motion to dismiss (735 ILCS 5/2-619(a)(9) (West 2018)) or in the alternative to stay the plaintiff's class action complaint pursuant to the arbitration provision contained in the parties' agreement. In its motion to dismiss, the defendant argued that: (1) it was not subject to the provisions of the DSCPA because legal work was performed for the plaintiff by an Illinois licensed attorney[1]; (2) the plaintiff's complaint failed to plead deceptive conduct by the defendant because the agreement between the parties contained a comprehensive list of disclosures by the defendant and acknowledgements by the plaintiff regarding the services offered and accepted; and (3) the plaintiff had not met the commonality requirements to maintain a class action lawsuit. In the alternative, the defendant argued that should the court choose not to dismiss the case on the aforementioned grounds, it should stay the matter pursuant to the arbitration provision in the "engagement letter" signed by the plaintiff in obtaining the defendant's services, until the conclusion of the arbitration proceedings.

¶ 11     In support of its motion to dismiss, or in the alternative stay proceedings pursuant to the arbitration agreement, the defendant attached: (1) the "engagement letter" signed by the plaintiff; and (2) an affidavit by attorney Jerry B. Kruz.

---

[1] The statute explicitly states that it applies only to "debt settlement providers" and excludes from the definition of "debt settlement providers," all "attorneys licensed, or otherwise authorized to practice in Illinois who are engaged in the practice of law." 255 ILCS 429/10 (West 2018).

4

¶ 12    The engagement letter (hereinafter the agreement) which was entered into between the plaintiff and the defendant on September 17, 2020, confirms "the terms and conditions" under which the defendant was being retained to "endeavor to resolve" the plaintiff's "unsustainable unsecured debt burden" at "less than [the] full balance." Under the agreement, the plaintiff acknowledged that this was a "structured arrangement" which required her "to pay monthly fees and to save money systematically," which the agreement defined as "Savings," over a certain period of time. The agreement required the defendant to "set aside funds for Savings monthly" and to deposit those Savings with the defendant, to be held in the defendant's legal trust account. The agreement clarified that "Savings" are separate and distinct from the "monthly fees" that the plaintiff was obligated to pay to the defendant and that these "[a]ccumulated Savings" are "utilized to effectuate potential resolutions" of the plaintiff's debt, as well as to "cover any other costs incurred which are not included in the monthly fees."

¶ 13    Under the agreement, the plaintiff further "acknowledge[d] and agree[d]" that the defendant's services were "not a quick-fix solution for resolving" her debt burden. She also agreed that she could not "unreasonably withhold consent for any reasonable offers" obtained by the defendant from creditors to resolve her debts, but that the defendant would "not make any payment to any creditor" unless she and the defendant's "designated lawyer" had both "approved" the proposed debt resolution.

¶ 14    The agreement noted that while the plaintiff was "retaining" the defendant, the defendant had affiliated lawyers admitted to practice in every jurisdiction where it accepted clients. The agreement stated that the defendant would designate an "Assigned Lawyer" admitted to practice in the plaintiff's jurisdiction to be the responsible lawyer for her file. Once the plaintiff's file was sent to the lawyer for an initial suitability assessment, the name of the lawyer would be provided

to the plaintiff. The defendant, however, was permitted to "unilaterally" change the "Assigned Lawyer" "from time to time." The agreement further provided:

> "Most work will be performed by persons who are not lawyers but who follow policies and procedures in advance by the designated Assigned Lawyer. All work not completed by the designated Assigned Lawyer shall be supervised by the designated Assigned Lawyer and will be performed in accordance with policies and procedures previously approved by the designated Assigned Lawyer. *** At a minimum, the designated Assigned Lawyer will determine if [the plaintiff] is a suitable candidate to participate and will review every proposed Resolution before it is finalized. Any matter requiring a legal opinion, legal judgment or advice of a lawyer will be referred to the Assigned lawyer."

¶ 15    In defining the scope of the defendant's engagement, the agreement explicitly limited the scope of the defendant's representation to: (1) reviewing the plaintiff's debt situation; and (2) negotiating and resolving her debt. The agreement further stated that the following, non-inclusive list of services, were not within that scope: (1) litigation, arbitration or any type of legal service not specifically described in the agreement; (2) attempts to repair the plaintiff's credit or correct entries on her credit reports; (3) loan modifications; and (4) any guarantees or elimination of creditor attempts to collect on any of the plaintiff's debts.

¶ 16    According to the agreement, should the plaintiff be sued or forced into arbitration by any creditor, the defendant strongly advised a supplemental legal telephone consultation with her "Assigned Lawyer." Furthermore, should the plaintiff choose to pursue bankruptcy, the defendant "may be able to refer" her to an "independent litigation/arbitration counsel and/or independent bankruptcy counsel," but would not provide such services itself.

¶ 17    The agreement further disclosed the fees and costs payable by the plaintiff for the

defendant's services, including: a flat fee retainer of $300 payable over five months; a monthly legal administrative fee of $50; a service cost of 20% of the plaintiff's total scheduled debts, payable by monthly installments of $290.82; and a resolution administration fee of $75 for each of the client's debts that were resolved, unless the "Assigned Lawyer" had to negotiate the resolution, in which case the fee was $200.

¶ 18     The agreement further provided that the defendant targeted a reduction of at least 35% of the balance of each debt, but that if this target was not met the plaintiff would receive a *pro rata* refund of the monthly fees payable under the agreement. Apart from this, the agreement stated that "there [was] no guarantee" that "any or all" of the plaintiff's debts would be resolved.

¶ 19     The agreement also contained an arbitration clause, requiring all claims and disputes arising from and related to the agreement to be resolved by "final and binding" arbitration. The agreement permitted the plaintiff to opt out of the arbitration requirement within 30 days of signing the agreement by sending a signed, written notice to the defendant. The agreement, however, provided that if the defendant opted out of arbitration, she nonetheless waived her right to a jury trial. The parties agree that the plaintiff never opted out of the arbitration requirement.

¶ 20     The signature page for the agreement, signed by the plaintiff, instead certified, *inter alia*: that the terms and conditions of the agreement had been explained to her; that she had an opportunity to confer with independent counsel before signing the agreement; and that she confirmed and agreed to arbitrate any claims arising from the parties' agreement and to waive any right to bring or participate in a class action lawsuit against the defendant.

¶ 21     The agreement also incorporated by reference an "Affidavit of Compliance," by Mark. S. Roberts, a representative of the defendant, who attested that he had a face-to-face meeting with the plaintiff to review her file and explain to her the scope of the defendant's representation and

services. According to this affidavit, subjects that were reviewed with the plaintiff "in writing, and where appropriate orally in response to questions," included, *inter alia*: the limited scope of the defendant's representation; the costs and fees associated with the defendant's services; the arbitration clause; and the inability of the defendant to clean up, fix, or repair the plaintiff's credit.

¶ 22    In support of its motion to dismiss, the defendant further attached an affidavit of Illinois licensed attorney, Jerry B. Kurz, who attested that he is "affiliated" with the defendant and was retained to represent the plaintiff on the defendant's behalf. Kurz averred that he performed legal services for the plaintiff in accordance with the terms of the agreement between the parties, including: analyzing the documents submitted by the plaintiff; determining that the plaintiff was a suitable candidate to participate in the debt reduction program described in the agreement; and reviewing the work of non-attorneys to ensure that it was completed in accordance with the policies and procedures that he had previously approved for clients assigned to him by the defendant. Kurz stated that he was the sole attorney responsible for the work performed on behalf of the plaintiff and exercised his independent judgment in performing that work. He further attested that in 2021, he ultimately reviewed and approved the settlement of two of the plaintiff's debts.

¶ 23    On July 8, 2022, the plaintiff filed her response to the defendant's motion to dismiss or in the alternative stay proceedings pending arbitration. The plaintiff asserted that the defendant had waived its right to enforce its arbitration clause by seeking a dismissal on the merits, and that in any event, the arbitration clause was unconscionable. In addition, the plaintiff asserted that the defendant could not shield itself from the DSCPA by claiming that it was exempt from its provisions because it was a law firm when none of the services it offered required a law degree and none of the individuals it actually employed practiced law. The plaintiff therefore argued that pursuant to the DSCPA, the defendant's entire contract, including the arbitration provision, was

void.

¶ 24    In support, the plaintiff attached: (1) her own affidavit; and (2) an email exchange between her attorney and the defendant's attorney regarding arbitration proceedings.

¶ 25    In her affidavit, the plaintiff attested that after being solicited by the defendant for debt settlement services, she was told that the defendant could assist her with settling her debts for a reduced amount. Based on the defendant's name, *i.e*. Lakeview *Law Group*, she believed that "they were attorneys and could do things that other debt settlement companies could not." The plaintiff stated that when she hired the defendant, she never spoke to any individual that she understood to be an attorney, or consulted or communicated with any attorney who either worked for or was affiliated with the defendant. The plaintiff further averred that she did not: speak to Kurz, sign a retainer with him, receive any legal advice or assistance from him or otherwise communicate with him in any way. She was not aware that he was reviewing her file and was not told what that specifically meant. In fact, the plaintiff did not know Kruz's name until after her suit was filed and was not given any information on how to speak with him or any other attorney working for the defendant.

¶ 26    The email exchange between counsels, attached to the plaintiff's response to the defendant's motion to dismiss, further revealed that on June 3, 2022, the plaintiff's attorney sent an email to the defendant's counsel informing him that, while it was the plaintiff's position that the entire agreement between the parties was void for unconscionability, the plaintiff was willing to stay the proceedings and submit to arbitration the threshold question of whether the defendant engaged in the practice of law and was therefore exempt from the DSCPA. The plaintiff's counsel indicated that he was convinced that any arbitrator would find that the defendant was not exempt from the DSCPA and that the agreement between the parties was therefore void as it was made by

a non-licensed debt settlement service provider. In his email, the plaintiff's counsel offered the names of three potential neutral arbitrators that would be acceptable to the plaintiff. Finally, counsel stated that if the defendant refused to "agree to refer this matter to arbitration on the terms outlined above, it will have waived its right to enforce its arbitration clause," and that regardless, the plaintiff reserved her right to argue that the arbitration provision was both void and unconscionable before the circuit court.

¶ 27    In  response to this email, on June 6, 2022, the defendant's attorney emailed the plaintiff's counsel stating that the defendant did not agree and that "[t]here [wa]s no need for a discussion."

¶ 28    The defendant subsequently filed its reply in support of its motion to dismiss on July 29, 2022, repeating the same arguments it had made in its original pleading.

¶ 29    On January 27, 2023, the circuit court denied the defendant's motion to dismiss on the issue of whether it was exempt from liability under the DSCPA, finding that there remained questions of fact as to whether the assigned Illinois attorney, Kurz, was engaged in the practice of law when he provided services pursuant to the agreement between the parties. The court continued the matter as to the remaining issues, including whether the case should be stayed pending arbitration.

¶ 30    On February 17, 2023, the circuit court issued a written order finding that the defendant had waived any right to compel arbitration by actively litigating the case and seeking dismissal on the merits. Specifically, the court ruled that the defendant waived arbitration because it "asked the Court to rule as a matter of law on substantive issues in the case. By submitting these issues to the Court, [the defendant] has acted in a manner that is inconsistent with its right to arbitrate, and thus, has waived the arbitration provision."

¶ 31    The defendant now appeals.

¶ 32                                    II. ANALYSIS

¶ 33     On appeal, the defendant solely challenges the circuit court's denial of its right to arbitrate. The defendant argues that the circuit court erred when it found that the defendant waived its right to compel arbitration pursuant to the parties' written agreement by simultaneously filing a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2018)). For the following reasons, we disagree.

¶ 34     At the outset, we note that the parties dispute the applicable standard of review for this interlocutory appeal. The defendant maintains that the standard of review is *de novo* because the court's ruling was based upon undisputed facts and was made as a matter of law. The plaintiff, on the other hand, argues that we should review the circuit court's order under an abuse of discretion standard because the motion to stay proceedings pending arbitration is injunctive in nature, and therefore, subject to deferential review.

¶ 35     We recognize that our appellate court is "split on the issue of whether an abuse of discretion standard or *de novo* standard applies to cases such as this one." *Glazer's Distributors of Illinois Inc. v. NWS-Illinois, L.L.C.,* 376 Ill. App. 3d 411, 419 (2007); see also *Bovay v. Sears, Roebuck and Co.*, 2013 IL App (1st) 120789, ¶ 24; *Clanton v. Oakbrook Health Centre, Ltd.*, 2022 IL App (1st) 210984, ¶¶ 41-42. A number of decisions from the First District Appellate Court have determined that an abuse of discretion applies in reviewing a circuit court's decision regarding waiver of arbitration rights. *Id.*; see *e.g.*, *Schroeder Murchie Laya Assocs. v. 1000 W. Lofts*, 319 Ill. App. 3d 1089, 1092-94 (2001); *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1189 (2000); *Brooks v. Cigna Property & Casualty Cos.,* 299 Ill. App. 3d 68, 71 (1998). Application of this deferential standard stems from the recognition that in determining whether a party's actions constitute waiver, the circuit court must engage in fact-finding. See *Bovay,* 2013 IL App (1st) 120789, ¶ 24; *Glazer's Distributors of Illinois,* 376 Ill. App. 3d at 423. In contrast,

11

"[t]he Second, Third, and Fifth Districts of this court have determined that a *de novo* review is appropriate" where the circuit court does not hold an evidentiary hearing prior to determining the issue of waiver or where the ruling is based on undisputed facts. *Bovay*, 2013 IL App (1st) 120789, ¶ 24; see also *Watkins v. Mellen*, 2016 IL App (3d) 140570, ¶ 12; *La Hood v. Central Illinois Construction, Inc.* 335 Ill. App. 3d 363, 364 (2002); *Federal Signal Corp. v. SLC Technologies, Inc.,* 318 Ill. App. 3d 1101, 1105-06 (2001).

¶ 36    More recently, this appellate court has held that "[t]his split in authority" is best "reconciled by reference to general principles established by our supreme court" in deciding interlocutory appeals from denials of injunctive relief. *Bovay*, 2013 IL App (1st) 120789, ¶ 24; see also *Koehler v. Packer Group Inc.*, 2016 IL App (1st) 142767, ¶ 22; *Glazer's Distributors of Illinois*, 376 Ill. App. 3d at 419. We noted that while the scope of review of such appeals is normally limited to an examination of whether or not the circuit court abused its discretion in granting or refusing the requested interlocutory relief, where the question presented is one of law, the reviewing court determines it independently of the circuit court's judgment. *Bovay*, 2013 IL App (1st) 120789, ¶ 25. Accordingly, we held that in interlocutory appeals of orders denying a party's motion to compel arbitration, questions of law should be reviewed *de novo*, while findings of fact should be reviewed for an abuse of discretion in light of a proper understanding of the law. *Bovay*, 2013 IL App (1st) 120789, ¶ 24; *Koehler,* 2016 IL App (1st) 142767, ¶ 22; see also *Clanton*, 2022 IL App (1st) 210984, ¶ 43.

¶ 37    We agree with this rationale and apply a bifurcated standard of review, analyzing questions of fact for an abuse of discretion, and legal findings *de novo*. *De novo* review means that we perform the same analysis as the trial judge. *Khan v. BDO Seidman, L.L.P.*, 408 Ill. App. 3d 564, 578 (2011). An abuse of discretion occurs only when the ruling is arbitrary, fanciful, or

unreasonable, or when no reasonable person would take the same view. *Bovay*, 2013 IL App (1st) 120789, ¶ 26.

¶ 38 Turning to the merits of this case, for the following reasons, we find that regardless of the applicable standard of review, the defendant cannot show that its conduct before the circuit court reflected anything but a waiver of its right to compel arbitration.

¶ 39 It is axiomatic that "[b]ecause arbitration is an efficient method of dispute resolution, waiver of the right to arbitrate is not lightly inferred." *Atkins v. Rustic Woods Partners,* 171 Ill. App. 3d 373, 378 (1988); see also; *Koehler*, 2016 IL App (1st) 142767, ¶ 22. Nonetheless, a party may waive its contractual right to arbitration where it conducts itself in a manner that is inconsistent with the arbitration clause, thus indicating an abandonment of that right. *Id.* (quoting *Northeast Illinois Regional Commuter R.R. Corp. v. Chicago Union Co.*, 358 Ill. App. 3d 985, 996 (2005)); *Clanton,* 2022 IL App (1st) 210984, ¶ 47; see also *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1174 (2008). In deciding whether a party waived its contractual right to arbitration the "crucial inquiry" is "whether the party has acted inconsistently with its right to arbitrate." (Internal quotation marks omitted) *Clanton,* 2022 IL App (1st) 210984, ¶ 43; *Koehler,* 2016 IL App (1st) 142767, ¶ 22; see also *State Farm Mutual Automobile Insurance Co. v. George Hyman Construction Co.*, 306 Ill. App. 3d 874, 833 (1999). A party acts inconsistently with its right to arbitrate when it submits issues that are arbitrable under the contract to a court for a decision. *Id*.

¶ 40 Our research has revealed various factual and procedural settings where Illinois courts have held that a party abandoned the right to arbitrate by filing substantive pleadings prior to attempting to invoke an arbitration clause, including: filing a motion for summary judgment (*Applicolor, Inc. v. Surface Combustion Corp.,* 77 Ill. App. 2d 260, 267 (1966); *State Farm*

*Mutual,* 306 Ill. App. 3d at 885); filing an answer without asserting the right to arbitrate (*Gateway Drywall & Decorating, Inc. v. Village Construction Co.,* 76 Ill. App. 3d 812, 816 (1979)); and filing a section 2-615 motion to dismiss a complaint for failure to state a cause of action without raising the arbitration clause (*Atkins v. Rustic Woods Partners,* 171 Ill. App. 3d at 378). On the other hand, our courts have held that the following actions by a party did not constitute waiver of the right to arbitrate: filing a motion contesting venue (*Brennan v. Kenwick,* 97 Ill. App. 3d 1040, 1043 (1981)); and filing an answer including the affirmative defense of the arbitration agreement (*Kessler, Merci, & Lochner, Inc. v. Pioneer Bank & Trust Co.,* 101 Ill. App. 3d 502, 505 (1981)).

¶ 41    As these decisions reflect, "the operative distinction between judicial filings and actions that constitute a waiver of the right to compel arbitration and those that do not is whether, prior to seeking arbitration, the party has placed substantive issues before the [circuit] court." *Watkins,* 2016 IL App (3d) 140570, ¶ 15. Accordingly, the existence of a waiver is not determined by "the number of papers filed with the [circuit] court" (*Kostakos v. KSN Joint Venture No. 1*, 142 Ill. App. 3d 533, 536-37 (1986)) or "the form" of those pleadings but rather "by the types of issues submitted to the court for resolution." *Watkins*, 2016 IL App (3d) 140570, ¶ 15; see also *Koehler*, 2016 IL App (1st) 142767, ¶ 22.

¶ 42    In the present case, the parties disagree as to whether the defendant's conduct in filing a section 2-619 motion to dismiss the plaintiff's class action lawsuit or in the alternative stay proceedings pending arbitration constituted a waiver of the defendant's right to arbitrate. The defendant contends that it should not be penalized for simultaneously requesting the dismissal of the plaintiff's class action lawsuit and a stay of the circuit court proceedings pending arbitration. The plaintiff, on the other hand, asserts that because the defendant's motion sought dismissal first and a stay of the proceedings only as an alternative to the circuit court's denial of such a motion,

the defendant's claim that it wanted to proceed to arbitration is at best disingenuous. More importantly, the plaintiff asserts that because the defendant's motion to dismiss asked the circuit court to analyze the provisions of the parties' contract in determining the applicability of the DSCPA, and the level of deception employed by the defendant in soliciting the plaintiff as a client, it placed substantive issues before the circuit court, and thereby waived the defendant's right to arbitration. For the following reasons, we agree with the plaintiff.

¶ 43    In this respect, we find the decision in *Watkins*, 2016 IL App (3d) 140570, ¶ 15, instructive. In that case, the trustee of a land trust and partnership filed a complaint for declaratory judgment against certain beneficiaries/partners seeking authorization from the court to sell the assets of the trust. *Id.* ¶ 6. The trust included a partnership agreement that, *inter alia*, gave the trustee the authority to sell any portion of the property and directed the trustee to "act or omit to act upon the written direction of the Partnership." (Internal quotation marks omitted.). *Id.* ¶ 4. Three of 26 beneficiaries/partners objected to the proposed sale. *Id.* ¶ 6. After the trustee filed a declaratory judgment action, the three dissenting partners filed a section 2-619 motion to dismiss the complaint on the ground the trustee lacked standing to bring the complaint because the partnership agreement required the trustee to have the prior unanimous consent of all of the partners before taking any action to sell the trust property. *Id.* ¶ 7. After the circuit court denied the motion to dismiss, the defendants raised the arbitration clause. *Id.* The trustee responded that the defendants had waived enforcement of the arbitration clause by filing the aforementioned motion to dismiss. *Id.*

¶ 44    In affirming the circuit court's denial of the defendants' motion to compel arbitration, we found that the issue the circuit court was being asked to decide in analyzing the defendants' motion to dismiss was the very issue the defendants would have submitted to arbitration, specifically, whether the provisions of the trust/partnership agreement required unanimous shareholder

approval before any action on the trust could be taken. *Id.* ¶ 13. We therefore held that because the defendants had "placed substantive issues of contractual interpretation before the [circuit] court" they had waived their right to compel arbitration. *Id.*

¶ 45    Just as in *Watkins*, in the present case, the defendant attempted to obtain dismissal of the plaintiff's class action lawsuit by making the same arguments that the parties would have submitted to arbitration, namely: (1) whether the DSCPA was applicable to the plaintiff's claims since she was represented by an Illinois attorney; and (2) whether the plaintiff could make out a claim for deceptive conduct, in light of the disclosures and disclaimers made in the parties' agreement. In other words, by arguing the provisions of the parties' contract the defendant asked the circuit court to rule as a matter of law on substantive issues in the case. By submitting these issues to the circuit court, the defendant acted in a manner inconsistent with its right to arbitrate. We therefore conclude that the circuit court properly denied the defendant's motion to stay proceedings pending arbitration.

¶ 46    The defendant, nonetheless, asserts that *Watkins* is inapplicable because unlike in that case, here, the motion to dismiss was not filed prior to the motion to compel arbitration, but rather simultaneously. Citing *Weiss v. Waterhouse Securities, Inc.,* 208 Ill. 2d 439, 448 (2004), the defendant asserts that our supreme court has explicitly endorsed the filing of such simultaneous pleadings.

¶ 47    At the outset, we note that contrary to the defendant's position, the decision in *Weiss* nowhere addressed the waiver of a party's right to compel arbitration. Rather, that decision dealt with the supreme court's jurisdiction to consider a defendant's simultaneously filed section 2-615 motion to strike (735 ILCS 5/2-615 (West 2004)) a class action lawsuit based on a lack of commonality between the plaintiffs (735 ILCS 5/2-801 (West 2004)) and a motion to compel the

plaintiff's individual claims to arbitration. *Id*. In finding that it had jurisdiction to address both motions based on the law of the case doctrine, in dicta our supreme court noted that it was procedurally proper for the defendant to file both motions at the same time. *Id*. In doing so, the court noted that the issues raised by the motion to strike the class action and the motion to compel arbitration were "intertwined" because the ruling on the motion to strike the putative class would necessarily have determined the validity of the order to compel arbitration for each individual plaintiff, absent such a class certification. *Id*. As the court noted "We need not force a litigant to file two motions when the ruling on the motion to compel would be a foregone conclusion after the ruling on the motion to strike." *Id*. at 449.

¶ 48    Unlike in *Weiss*, where the defendants sought to avoid class certification by filing a section 2-615 motion to strike based on a lack of commonality among the plaintiffs, in the present case, the defendant filed a section 2-619 motion to dismiss on an affirmative matter asking the court to analyze the parties' contract and decide the merits of the plaintiff's class action lawsuit. As such, the issues raised here by the defendant's motion to dismiss or in the alternative stay proceedings, were not so simple and "intertwined" that a ruling on the motion to stay would have been a foregone conclusion after a ruling on the motion to dismiss.

¶ 49    Moreover, as already noted above, contrary to the defendant's assertion, just because the defendant could have procedurally filed a simultaneous motion to dismiss and to stay proceedings pending arbitration, does not automatically mean that such a pleading would have prevented the waiver of its right to arbitration. As already noted above, we have repeatedly held that the existence of waiver is not determined by the form or number of pleadings filed prior to the request for arbitration, but rather "by the types of issues submitted to the court for resolution" by those pleadings. *Watkins*, 2016 IL App (3d) 140570, ¶ 15; see also *Koehler*, 2016 IL App (1st) 142767,

¶ 22. Where the circuit court is asked to consider substantive issues in the case, the party submitting the issue to the court inescapably waives its right to arbitration. *Id.*

¶ 50    Here, the defendant clearly sought to have the circuit court dismiss the plaintiff's class action lawsuit on the merits but attempted to shield itself from the possibility of the circuit court's denial of such a motion, by alternatively seeking a stay of the proceedings until the matter could proceed to arbitration. The defendant's machinations are apparent from the email exchange between its counsel and that of the plaintiff, which show the defendant outright rejecting the plaintiff's offer to proceed to arbitration on the threshold issue of whether the DSCPA applies to the parties' contract. By rejecting the plaintiff's offer to arbitrate, the defendant explicitly revealed its desire that this particular substantive issue be decided by the circuit court. As such, the defendant clearly acted in a manner inconsistent with its right to arbitrate. It cannot now be allowed to have its cake and eat it too.

¶ 51                                III. CONCLUSION

¶ 52    Accordingly, for the aforementioned reasons, we hold that the circuit court properly denied the defendant's request to stay proceedings pending arbitration. We therefore affirm the circuit court's order and remand the cause for further proceedings.

¶ 53    Affirmed.