2025 IL App (1st) 241383

SIXTH DIVISION

July 25, 2025

No. 1-24-1383

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| WESTLAKE SERVICES LLC, d/b/a Westlake Financial Services, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 22M6009428 |
| ERICA WILLIAMS, | ) ) ) | Honorable Alison Conlon, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Justice Hyman and Justice Gamrath concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-Appellant Westlake Services LLC appeals the denial of its motion to compel arbitration pursuant to Supreme Court Rule 307(a)(1), which allows interlocutory appeals from an order of the circuit court denying a motion to compel arbitration. Ill. S. Ct. R. 307(a)(1) (eff. Nov.

1, 2017). We hold the circuit court did not err in denying Westlake's motion to compel arbitration. The court properly found that the class action waiver applied only within the context of the arbitration agreement and explicitly waived rights to arbitrate a class action. For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3     Defendant-appellee Erica Williams entered a retail installment contract with Economy Auto Mart for the purchase of a used 2013 Hyundai Sonata on November 19, 2016. Williams also signed an arbitration agreement that stated in relevant part:

1. Either you or we may choose to have any dispute between us decided by arbitration and not in court.

2. If a dispute is arbitrated, you and we will each give up our right to a trial by the court or a jury trial.

3. If a dispute is arbitrated, you will give up your right to participate as a class representative or class member on any class claim you may have against us.

4. The information you and we may obtain in discovery from each other in arbitrations is generally more limited than in a lawsuit.

5. Other rights that you and we would have in court may not be available in arbitration.

6. Even if a dispute is arbitrated, we can still repossess your vehicle if you do not honor your contract and you or we may seek provisional remedies from a court.

¶ 4     The installment contract stated, "you expressly waive any right you may have to arbitrate a class action" and "[b]oth you and we retain the right to exercise self-help remedies and to seek provisional remedies from a court. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court." AFS

Acceptance LLC was the loan servicer until April 18, 2017, when AFS assigned the installment contract to Westlake Services, LLC, d/b/a Westlake Financial Services.

¶ 5    In January of 2018, Westlake repossessed the vehicle belonging to Williams due to her failure to make payments on the account. The vehicle was sold for $3,200, and the sale proceeds did not cover the debt. On November 16, 2022, Westlake sued Williams to collect the remaining debt of $10,651.08 and court costs. Westlake issued a summons, and Williams was served on December 13, 2022.

¶ 6    Williams retained counsel and an appearance was filed on January 3, 2023. On June 7, 2023, Westlake filed an amended complaint in which it attached the installment contract but did not attach the arbitration agreement. The complaint alleged a single cause of action for breach of contract and a summary procedure to recover the amount owed. Williams filed her "Answer to Amended Complaint and Counterclaim - Class Action" on July 7, 2023, which included affirmative defenses. She brought five counterclaims on behalf of herself and a putative class of consumers. Her affirmative defenses and counterclaims alleged violations of the Motor Vehicle Retail Installment Sales Act (815 ILCS 375/1 *et seq.* (West 2022)), the Uniform Commercial Code (UCC) (810 ILCS 5/1-101 *et seq.* (West 2022)), the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2022)), and the Sales Finance Agency Act, (205 ILCS 660/2 (West 2022)).

¶ 7    Williams alleged that Westlake violated the UCC and other statutes by improperly allocating payments to "pay to pay" fees and failing to send notices of such allocation. "Pay to pay fees" are charges imposed on consumers when they use certain methods to make payments. Williams also filed a motion on July 7, 2023, to transfer the case to the chancery division of the circuit court. The motion was granted on August 4, 2023. Westlake filed a response to the

affirmative defenses, claiming they were not proper under section 2-613 of the Code of Civil Procedure (735 ILCS 5/2-613 (West 2022)), did not respond to written discovery, did not constitute an answer to the counterclaims, and did not respond to the motion for class certification.

¶ 8    Eleven months after the filing of its complaint and about two weeks before the parties were scheduled to appear in court, Westlake filed a motion to dismiss counterclaims in favor of arbitration. The court heard arguments on the motion with full briefing of the parties but did not conduct an evidentiary hearing. On June 7, 2024, the circuit court denied the motion to dismiss counterclaims and found that Westlake had waived the right to arbitration by its litigation conduct; Williams was prejudiced; and the "no waiver" provision in the arbitration agreement was "not determinative" of the waiver finding. The court also found the arbitration agreement to be facially valid, the counterclaims were within the scope of the agreement, the doctrine of equitable estoppel did not apply, the agreement was not unconscionable, the class action waiver was limited to arbitration, and the counterclaims may proceed. This appeal followed.

¶ 9                                    II. JURISDICTION

¶ 10    The circuit court dismissed plaintiff-appellant's motion to dismiss counterclaims in favor of arbitration on June 7, 2024. Plaintiff-appellant timely filed its notice of appeal on July 2, 2024. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 11                                    III. ANALYSIS

¶ 12    On appeal, Westlake contends the circuit court erred in ruling that (1) Westlake waived the right to arbitrate class action counterclaims because its actions were consistent with the arbitration agreement, Williams suffered no prejudice, and the "no-waiver" language preserved Westgate's

right to compel arbitration and (2) the class waiver provision of the arbitration agreement bars class counterclaims in either arbitration or litigation.

¶ 13     A motion to compel arbitration is fundamentally a section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2022)) motion to dismiss or stay an action based on an affirmative matter, the exclusive remedy of arbitration. *Nord v. Residential Alternatives of Illinois, Inc.*, 2023 IL App (4th) 220669, ¶ 28. In ruling on a motion to dismiss and compel arbitration pursuant to section 2-619, the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141 (2006). Generally, the standard of review for an order granting or denying a motion to compel arbitration is abuse of discretion. *Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill. App. 3d 1101, 1105 (2001). But when the circuit court's decision is made without an evidentiary hearing and without findings on any factual issues, this court's standard of review is *de novo*. *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002). Here, no evidentiary hearing was held, and the circuit court's determination was based entirely on legal analysis. Thus, the appropriate standard of review is *de novo*. *Id.*

¶ 14     A court should grant a motion to compel arbitration if there is (1) a valid arbitration agreement between the parties and (2) the litigation falls within the scope of the arbitration agreement. *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 444-45 (1988).

¶ 15     As an initial matter, this court must determine whether it or an arbitrator should decide the motion to dismiss and compel arbitration. *Clark v. Foresight Energy, LLC*, 2023 IL App (5th) 230346, ¶ 17. Illinois courts follow a three-pronged approach when determining whether parties agreed to arbitrate: (1) if the dispute clearly falls within the arbitration clause, the court must compel arbitration; (2) if it clearly does not, the court must deny arbitration; and (3) if it is unclear,

the arbitrator decides arbitrability. *Id.* Westlake contends the parties agreed to arbitrate issues involving the validity and scope of the arbitration agreement. But "[w]hether a claim is arbitrable on its face is initially for the court to decide." *Kostakos v. KSN Joint Venture No. 1*, 142 Ill. App. 3d 533, 538 (1986).

¶ 16    Westlake argues that the circuit court erred in ruling that it waived the right to arbitrate the class action claims. Where a party waived its right to arbitration through litigation conduct or delay is not a question of arbitrability and is decided by a court. *Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411, 425 (2007). Waiver of the right to arbitrate turns on whether the moving party acted inconsistently with the arbitration clause. *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 38.

¶ 17                                    A. Westlake's Conduct

¶ 18    Illinois public policy encourages arbitration, and courts are reluctant to hold that a party has waived its arbitration rights. *Lundy v. Farmers Group, Inc.*, 322 Ill. App. 3d 214, 219 (2001). However, a court will find waiver if a party has acted inconsistently with claiming that right and shows an intention to abandon that right. *Id.* In determining a party's waiver, courts will consider (1) the moving party's conduct, (2) the party's delay in proclaiming a right to arbitrate, (3) any prejudice to the nonmoving party, and (4) whether the parties incorporated a no waiver provision in their arbitration agreement. *Kostakos*, 142 Ill. App. 3d at 536-38.

¶ 19    "Even when a party follows the letter of an arbitration agreement in invoking its right to arbitration, a court may conclude that the party has done something to waive that right." *Liberty Chevrolet, Inc. v. Rainey*, 339 Ill. App. 3d 949, 953 (2003). Submitting a substantive and arbitrable issue to a court is inconsistent with preserving a right to arbitrate. *Kostakos*, 142 Ill. App. 3d at 536. Thus, if a party files a complaint in court containing arbitrable issues, the party waives its

right to arbitrate the issue. *Schroeder Murchie Laya Associates., Ltd. v. 1000 West Lofts, LLC*, 319 Ill. App. 3d 1089, 1098 (2001). The party also waives its right to arbitrate counterclaims that are related to the complaint. *Id.* at 1099. But, there is "no rule that filing a complaint waives the plaintiff's right to demand the arbitration of new issues that the defendant has raised in a counterclaim." *Liberty Chevrolet, Inc.*, 339 Ill. App. 3d at 954. Accordingly, the issue of whether filing a complaint is inconsistent with seeking to compel arbitration of counterclaims depends on the relatedness of the claims. *Grossinger North Autocorp, Inc. v. Tsend-Auysh*, No. 1-05-0733, 2005 WL 4006535 (Ill. App. Ct. Nov. 18, 2005).

¶ 20    Williams argues that Westlake acted inconsistently with its arbitration agreement by filing its collection suit in court because the complaint and counterclaims involve the same contract, issues, and facts. Westlake contends that the counterclaims encompassed different issues than the complaint and fundamentally changed the nature of the litigation. Westlake cites *Household Finance Corp. III v. Buber*, 351 Ill. App. 3d 550, 555 (2004). There, the court determined that plaintiffs' filing of a foreclosure suit did not represent a waiver of their right to arbitrate counterclaims. The court clarified that the counterclaim, which stated that the plaintiff persuaded defendant to refinance their loan despite it exceeding their income, was "significantly far afield from the issues raised in plaintiff's foreclosure complaint" and involved actions beyond the scope of the contract. *Id.* at 554. We find this case distinguishable from *Household Finance Corp.* because the counterclaims here do not address conduct outside of the contract, but the claims are related to one another and include the same issues between the parties.

¶ 21    We note that in *Liberty Chevrolet, Inc.*, the court held that a plaintiff did not act inconsistently with its right to arbitrate by first filing a replevin suit seeking relief when the defendant raised complex counterclaims that sought specific relief, as the plaintiff could not

reasonably foresee that the defendant would file these counterclaims. We also find this case distinguishable from *Liberty Chevrolet, Inc.* because, in *Liberty*, the court did not address the issue of competing affirmative defenses and counterclaims being adjudicated simultaneously in both arbitration and litigation, as it had dismissed the initial replevin claim. *Liberty Chevrolet, Inc.*, 339 Ill. App. 3d at 952.

¶ 22   We find this court's decision in *Overland Bond & Investment Corp. v. Calhoun*, 2023 IL App (1st) 221804, instructive. In *Overland Bond*, a car loan servicer filed suit in court against consumers for defaulting on their car loans. *Id.* ¶ 3. In response, the consumers raised affirmative defenses and counterclaims, alleging that the loan servicer used a kill switch to remotely disable their vehicles in violation of the UCC and other statutes. *Id.* ¶ 8. The consumers argued the court should not allow the loan servicer to forum shop by initially pursuing collection actions in court, only to seek arbitration of class claims 16 months later. Ultimately, the court held that a dispute "encompasses the entire controversy, including the claims of all parties," regardless of whether the plaintiff anticipated the nature of the counterclaims. *Id.* ¶ 42. The court also found disingenuous the loan servicer's argument that the counterclaims were irrelevant to its collection action stating that "both the claims and counterclaims clearly arise from the same contracts, and the counterclaims stem directly from Overland's [loan servicer] conduct in response to defendant's [default payment] under those contracts." *Id.* ¶¶ 48, 49.

¶ 23   We also find *Beecham v. Lakeview Law Group of Sonny S. Shalom, P.L.L.C.*, 2023 IL App (1st) 230437-U, instructive. In *Beecham*, the court affirmed the circuit court's denial of defendant's motion to compel arbitration, holding that defendant had waived its right to arbitration by submitting substantive issues to the court. *Id.* ¶ 1. The court determined that by filing a section 2-619 motion to dismiss, addressing the merits of the plaintiff's claims before or simultaneously

with requesting arbitration, the defendant acted inconsistently with its contractual arbitration rights. We note that in *Beecham*, defendant had the opportunity to submit the issues to arbitration, following an e-mail exchange with plaintiff's attorney, but chose otherwise. *Id.* ¶¶ 26, 27. The court found that seeking a court ruling on issues central to the dispute, particularly contractual interpretation, constituted waiver regardless of the procedural timing. *Id.* ¶ 45. Like in *Beecham*, Westlake had an opportunity to invoke arbitration but instead chose to submit substantive issues to the court, thus acting in a manner inconsistent with preserving the right to arbitrate. Here, Westlake is the plaintiff and chose the litigation forum in the first instance. See *Glazer's*, 376 Ill. App. 3d at 425-26 ("The central premise of our conclusion is that Glazer's, which initiated the underlying litigation as a plaintiff, filed its original complaint before the circuit court without making any mention of arbitration" and sought complete relief before the circuit court).

¶ 24    We acknowledge the recent unpublished Fifth District Appellate Court decision in *Credit Acceptance Corp. v. Cartwright*, 2025 IL App (5th) 240636-U. There, the plaintiff obtained a default judgment after initiating a deficiency action in the circuit court, despite the existence of an arbitration clause contained in the underlying installment contract. The arbitration clause permitted either party to invoke arbitration even after litigation commenced. Pursuant to an agreement between the parties, a vacatur of the default judgment was entered on January 24, 2024. *Id.* ¶ 7. On the same day as the vacatur, defendant filed an answer, affirmative defenses, and a putative class action counterclaim against plaintiff. *Id.* ¶ 8. On the next day, the circuit court granted plaintiff's motion to voluntarily dismiss the complaint without prejudice. Seven days later, plaintiff filed a motion to dismiss or stay the proceedings in the circuit court and to compel arbitration of the counterclaim. The court noted that, up to that point, plaintiff had not submitted any substantive issues to the court for resolution, nor had a trial date been set. *Id.* ¶ 30. It also emphasized the

9

promptness of plaintiff's motion to compel arbitration and ultimately held that the arbitration clause applied and no waiver had occurred based on the timing and conduct of the parties. *Id.*

¶ 25   Westlake did not produce the arbitration agreement in its initial proceedings, revealing its existence 11 months after the filing of its complaint and two weeks before the parties were scheduled to appear in court. The plaintiff in *Credit Acceptance* promptly invoked arbitration, in contrast to Westlake's extended delay and failure to disclose the arbitration agreement for 11 months. Further, *Credit Acceptance* is distinguishable because, there, the plaintiff voluntarily dismissed its complaint, leaving only the counterclaim at issue, and the plaintiff also moved to compel arbitration within a week of that filing. Here, Westlake maintained its claim and waited three months after Williams filed her counterclaim before moving to compel arbitration.

¶ 26   The complaint and counterclaims are connected. Both parties claim violations of the same installment contract, and these claims directly concern facts about whether the consumer made payments, how Westlake allocated those payments, and what was or was not received. Further, the legal arguments advanced by Williams in her affirmative defenses to Westlake's complaint are the same legal arguments in her counterclaims. We find Westlake's complaint and the counterclaims involve the same installment contract, facts, and issues; thus, they are related to the collections action. Accordingly, the circuit court properly found that Westlake acted inconsistently with its own arbitration agreement by filing its initial claim in the circuit court. *Kostakos*, 142 Ill. App. 3d at 536 (submitting a substantive and arbitrable issue to a court is inconsistent with retaining a right to arbitrate). Therefore, the counterclaims did not encompass different issues than the complaint and did not fundamentally change the nature of litigation. *Overland Bond*, 2023 IL App (1st) 221804, ¶¶ 48, 49.

¶ 27                         B. Delays and Prejudice Suffered

¶ 28    Williams argues that Westlake's 11-month delay in disclosing the arbitration agreement and attempt to compel arbitration resulted in prejudice due to significant litigation costs. She maintains that the arbitration agreement was incorporated into and became part of the installment contract, but Westlake withheld its existence by not including it with either the original or amended complaint. According to Williams, this omission was prejudicial because "subprime consumers, often do not keep copies of contracts assuming they received them in the first instance" but "finance companies such as Westlake are legally required to maintain them in ready accessible files."

¶ 29    Westlake counters that "its alleged failure to produce the arbitration agreement in discovery or [its] alleged failure to attach the arbitration agreement to the complaint have no impact on the validity of the agreement or [its] ability to enforce the same." We find Westlake's argument unconvincing. As we noted above, in determining whether a party waived its right to arbitrate, courts must consider a delay in asserting arbitration and any prejudice to the party opposing arbitration. See *Liberty Chevrolet, Inc.* 339 Ill. App. 3d at 953.

¶ 30    In *Liberty Chevrolet Inc.*, this court found that defendant did not suffer prejudice because the plaintiff moved to compel arbitration of the counterclaims only six days after the counterclaims were filed and less than three months after litigation commenced. Here, Westlake filed its original complaint on November 16, 2022, and its first amended complaint on June 7, 2023. Westlake then filed the motion to compel arbitration on October 3, 2023, nearly three months after the answer and counterclaims were filed and nearly a year after the original complaint. Williams spent time, effort, and expenses, and Westlake caused prejudice to Williams by failing to timely raise the arbitration agreement and file the motion to compel arbitration. *Id.*

11

¶ 31                                    C. The Class Action Waiver

¶ 32    Finally, Westlake contends that the circuit court should have dismissed the class counterclaims because the class action waiver in the arbitration agreement applies to both litigation and arbitration. In response, Williams argues that the class action waiver is only applicable within the context of arbitration. She relies on *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022), in support of her argument. We find *Fischer* persuasive. In *Fischer*, the court held that a class action waiver solely applied within the context of arbitration where the terms were interwoven and "inexorably intertwined" with the arbitration agreement. *Id.* at *5. Here, the waiver was in the arbitration agreement and was not an independent installment contract; thus, the class action waiver is limited to arbitration. *Id.* at *2. The circuit court properly denied plaintiff motion to compel arbitration.

¶ 33                                    IV. CONCLUSION

¶ 34    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 35    Affirmed.

*Westlake Services LLC v. Williams*, 2025 IL App (1st) 241383

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-M-6009428; the Hon. Alison Conlon, Judge, presiding. |
| **Attorneys for Appellant:** | Daniel R. Waltz, of Troutman Pepper Hamilton Sanders, LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Daniel A. Edelman, Tara L. Goodwin, and Julie Clark, of Edelman, Combs, Latturner & Goodwin, LLC, of Chicago, for appellee. |