RENDERED: JUNE 16, 2016
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000002-I

FINAL

DATE 7-7-16 *[handwritten]*

THE KENTUCKY SHAKESPEARE FESTIVAL,                          MOVANT
INC.

ON REVIEW FROM COURT OF APPEALS
V.                        CASE NO. 2015-CA-001547-I
JEFFERSON CIRCUIT COURT NO. 14-CI-003526

BRANTLEY DUNAWAY                                          RESPONDENT

**OPINION OF THE COURT BY JUSTICE VENTERS**

**DENYING INTERLOCUTORY RELIEF**

Movant, Kentucky Shakespeare Festival, Inc. (KSF), seeks interlocutory relief following the Court of Appeals' denial of its CR 65.07 motion for an order to compel the Jefferson Circuit Court to confirm what KSF calls an "arbitration award" arising from an employment contract between KSF and Respondent, Brantley Dunaway. Upon review of KSF's motion and Dunaway's response, we decline to grant relief because we are persuaded that the dispute was not subject to an arbitration agreement and no "arbitration award" existed to be confirmed by the circuit court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2011, KSF, a nonprofit theatrical organization, hired Brantley Dunaway to serve as its director. KSF and Dunaway entered into an Employment Agreement which provided Dunaway with an annual salary to be supplemented with bonus payments each fiscal year if certain revenue

increases were achieved. Two years later, amid accusations of impropriety, KSF terminated Dunaway's employment. In connection with the termination, the parties negotiated a Severance and Release Agreement (Severance Agreement) that included a provision requiring KSF to pay Dunaway the 2013 fiscal year bonus calculated in accordance with the Employment Agreement.

Section 5 of the Employment Agreement contained the provisions for Dunaway's bonus compensation. Section 5(e) is the provision that KSF proffers as an agreement to arbitrate. The following portions of Section 5 are relevant to our review:

> 5(a): In addition to the Base Salary, [KSF] agrees to pay [Dunaway] an amount equal to ten percent (10 %) of the year over year increase in net revenues for education programming for each fiscal year of this employment agreement, computed beginning October 1, 2012, for the fiscal year from October 1, 2011, to September 30, 2011. . . .

> 5(b): In addition to the Based Salary, [KSF] agrees to pay [Dunaway] an amount equal to ten percent (10%) of the year over year increase in net revenues for non-educational, non-grant revenues for each fiscal year of this employment agreement, computed beginning October 1, 2012, for the fiscal year from October 1, 2011, to September 30, 2011 . . . .

> 5(e): Sound accounting principles will be used to determine the increases for each fiscal year, and state and federal income taxes will not be deducted. *The parties agree to abide by the determination of the independent firm of certified public accountants currently employed by [KSF] to prepare the financial statement for the fiscal year in question in case of a dispute as to the true amount of the net profits, and each party agrees to accept such determination as final.*

(Emphasis added).

2

The independent accounting firm referred to in Section 5(e) was Deming Malone Livesay & Ostroff ("DMLO"). It is not clear whether the parties attempted to calculate the 2013 bonus before the dispute developed, but it is clear that a dispute arose, and pursuant to Section 5(e), DMLO was called upon to determine the "true amount of the net profits" from which the bonus pay would be calculated.[1] On February 10, 2014, KSF informed Dunaway by letter as follows:

> [DMLO] recently completed their audit of Kentucky Shakespeare's financial records for Fiscal Year 2013. As part of that audit, and as required by the employment contract in effect between you and Kentucky Shakespeare during FY13, DMLO calculated your performance bonus in accordance with the net revenue formulas in your contract as applied in prior years. They have calculated that no bonus is due. The detail of that calculation is attached.

After KSF informed Dunaway that he was not entitled to a bonus for the 2013 fiscal year, Dunaway filed suit for breach of contract.[2] In response to Dunaway's suit, KSF asserted no claim that Dunaway's bonus calculation was governed by an arbitration agreement, nor did it assert that the bonus issue had already been resolved by binding arbitration. KSF did not file a counter-claim seeking a judicial confirmation of an arbitration award for the 2013 bonus issue. The first reference to "arbitration" came nearly a year after the

---

[1] It has not escaped our attention that Sections 5(a) and 5(b) base Dunaway's bonus pay on "net revenues" while Section 5(e) provides that when a dispute arises, DMLO shall determine the "true amount of the net profits." Whether the incongruity of "net revenue" and "net profit" is purposeful or inadvertent is not germane to our review.

[2] Appellant also claimed entitlement under the Severance Agreement to other payments, but the validity of those claims is not before us.

3

suit was filed when, in June 2015, KSF filed a "Motion for Partial Summary Judgment and Declaratory Relief." The declaratory judgment component of KSF's motion requested a declaration that, pursuant to the terms of the Employment Agreement and the Severance Agreement, the parties must abide by KSF's accounting firm's "determination that Dunaway is not entitled to a Fiscal Year 2013 bonus" because that determination was a binding "arbitration award."

Neither Section 5 nor any other part of the Employment Agreement specifically refers to "arbitration," nor does it mention submitting bonus disputes to an arbitrator or any other process of alternative dispute resolution. The Severance Agreement explicitly provided that the venue for any proceeding involving the Severance Agreement would be a "court of competent jurisdiction for Jefferson County, Kentucky."

The Jefferson Circuit Court denied KSF's motion for declaratory relief, holding that Section 5(e) was not an agreement to forgo litigation and arbitrate any bonus dispute, and thus KSF was not entitled to an order of the court confirming DMLO's "arbitration award." KSF then sought interlocutory relief in the Court of Appeals pursuant to CR 65.07. The Court of Appeals agreed with the circuit court, concluding that Section 5(e) constituted an agreement for an appraisement rather than an agreement to arbitrate.[3] Unsuccessful at the

---

[3] *Black's Law Dictionary* (10th ed. 2014) defines appraisement as "An alternative-dispute-resolution method used for resolving the amount or extent of liability on a contract when the issue of liability itself is not in dispute. Unlike

4

Court of Appeals, KSF brought this action pursuant to CR 65.09, which provides: "Any party adversely affected by an order of the Court of Appeals in a proceeding under Rule 65.07 or Rule 65.08 may . . . move the Supreme Court to vacate or modify it." KSF petitions this Court for a "declaration confirming the arbitration award rendered by the accounting firm[.]" For the reasons stated below, we decline to do so.

## II. ANALYSIS

KSF petitions this Court for an order compelling the Jefferson Circuit Court to "issue a declaration confirming the arbitration award rendered by the accounting firm of Deming, Malone, Livesay & Ostroff." Based upon our review of the record, we are persuaded that no arbitration agreement existed between KSF and Dunaway. We are satisfied that no arbitration proceeding occurred, and there is no arbitration award to be confirmed.

As it did before the Court of Appeals, KSF claims before this Court that Section 5(e) of the Employment Agreement contains an agreement to arbitrate any dispute about Dunaway's annual salary bonus. The critical language of Section 5(e) is this sentence:

> The parties agree to abide by the determination of the independent firm of certified public accountants currently employed by [KSF] to prepare the financial statement for the fiscal year in question in case of a dispute as to the true amount of the net profits, and each party agrees to accept such determination as final.

---

arbitration, appraisement is not a quasi-judicial proceeding but instead an informal determination of the amount owed on a contract."

KSF argues that Section 5(e) is a "delegation of the calculation of Dunaway's bonus to a third-party decision maker" which "constitute[s] an agreement to arbitrate, not litigate, any dispute related to Dunaway's bonus calculation." KSF bears the burden of proving that Section 5(e) was intended by the parties as an arbitration agreement, and further, that the DMLO determination of net profit constitutes an "arbitration award" that qualifies for judicial confirmation. "[A] party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 590 (Ky. 2012) (citations omitted). "Questions concerning the formation of an arbitration agreement are resolved in accordance with the applicable state law governing contract formation." *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 320 (Ky. 2015).

We accordingly apply here the same fundamental principles of contract interpretation that would apply for interpreting any other type of contract. Our review must begin with an examination of the plain language of the instrument. "'In the absence of ambiguity, a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Wehr Constructors, Inc. v. Assurance Company of America*, 384 S.W.3d 680, 687 (Ky. 2012) (quoting *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). "A contract is ambiguous if a reasonable person

6

would find it susceptible to different or inconsistent interpretations." *Hazard Coal Corporation v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (citation omitted).

"When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine the parties' intentions." *3D Enterprises Contracting Corporation v. Louisville and Jefferson County Metropolitan Sewer District*, 174 S.W.3d 440, 448 (Ky. 2005) (citation omitted). If the language is ambiguous, the court's primary objective is to effectuate the intentions of the parties. *Cantrell Supply, Inc. v. Liberty Mutual Insurance Company*, 94 S.W.3d 381, 384 (Ky. 2002). "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Abney v. Nationwide Mutual Insurance Company*, 215 S.W.3d 699, 703 (Ky. 2006) (quoting *Cantrell*, 94 S.W.3d at 385). The interpretation of a contract, including determining whether a contract is ambiguous, is a question of law to be determined de novo on appellate review. *Id.*

Section 5 of the Employment Agreement has ambiguities, such as the one identified above in Footnote 1. However, the critical passage proffered by KSF as the arbitration clause is free of ambiguity: "The parties agree to abide by the determination of the independent firm of certified public accountants currently employed by [KSF] to prepare the financial statement for the fiscal year in question in case of a dispute as to the true amount of the net profits, and each party agrees to accept such determination as final." By its plain language, Section 5(e) directs that if the parties disagree on the net profit figure

to be used for calculating Dunaway's bonus, KSF's accounting firm, (now DMLO), will "prepare the financial statement for the fiscal year in question" based upon "sound accounting principles" and its calculation of KSF's net profit shall be binding. No reasonable reading of Section 5 supports the conclusion that DLMO will calculate Dunaway's bonus, or that the parties are in any way bound by a final calculation of the bonus rendered by DMLO. Section 5(e) provides a resolution only for disputes about KSF's "net profit" for whatever effect that figure may have on bonus calculation as otherwise set forth in the contract.

Significantly, Section 5(e) makes no express reference to "arbitration," nor does it employ words of similar import connoting an arbitrational process before a tribunal of decision makers from which we might imply the parties' intention to arbitrate. The fact that KSF did not promptly assert the arbitration award as an affirmative defense against that portion of Dunaway's lawsuit certainly suggests that KSF did not immediately think of Section 5(e) as an arbitration clause and did not immediately regard the DMLO calculation as a binding arbitration award.

Even more telling is the fact that the Severance Agreement expressly guarantees Dunaway the right "to be paid . . . bonus amounts earned under the terms of [his] employment agreement with [KSF]" and has the additional provision that the "[v]enue for any proceedings regarding this Agreement shall be in a court of competent jurisdiction for Jefferson County, Kentucky." Thus, the Severance Agreement that afforded Dunaway the contractual right to the

8

bonus pay for which he filed suit contains the further provision for litigation of the dispute in a court of Jefferson County, Kentucky. The language of Section 5 does not expressly or implicitly provide for arbitration of the bonus dispute, and the Severance Agreement explicitly militates against an arbitration of the dispute.

We are mindful of the Kentucky Uniform Arbitration Act (KUAA), KRS 417.045-417.240, and specifically KRS 417.050, which excludes from the provisions of the Act "arbitration agreements between employees and employers."[4] Consequently, the fundamental due process provisions governing arbitration proceedings which are set forth in KRS 417.090 and KRS 417.100 may not directly apply to arbitration clauses in employment contracts.[5] Nevertheless, those provisions reflect the common perception that arbitration is an adversarial process with the fundamental components of due process including a hearing with an opportunity to present evidence and cross-examine witnesses, and to have representation by counsel if desired.

An agreement to abide by a "net profit" calculation of a particular accounting firm is fundamentally different than having the accounting firm serve as the binding arbitrator of the broader question of the bonus amount.

---

[4] In pertinent part, KRS 417.050 provides: "This chapter does not apply to: (1) Arbitration agreements between employers and employees or between their respective representatives . . . ."

[5] Generally, KRS 417.090 and KRS 417.100 provide that unless otherwise agreed, arbitration proceedings shall be conducted upon reasonable notice with an opportunity for each party to be heard by presenting evidence and witnesses and by examining opposing evidence and witnesses, and to be represented by counsel if desired.

Arbitration is a process, not an answer. We believe the trial court and the Court of Appeals correctly regarded Section 5(e) as something other than an arbitration clause. In summary, section 5(e) is unambiguous and contains none of the characteristics normally included in an arbitration clause or otherwise associated with the process of arbitration.

### III. CONCLUSION

Since we conclude that Section 5(e) is not an arbitration agreement, it follows that the DMLO's bonus calculation is not an "arbitration award" that can be confirmed by an appropriate court. Accordingly, the petition of The Kentucky Shakespeare Festival, Inc. for interlocutory relief pursuant to Cr 65.09 is denied.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Steven Clark
John O. Sheller
Stoll Keenon Ogden, PLLC

COUNSEL FOR APPELLEE:

Callie Elizabeth Walton
Gwin, Steinmetz & Baird, PLLC