NOTICE

Decision filed 06/03/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240636-U

NO. 5-24-0636

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| CREDIT ACCEPTANCE CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 23-LM-63 |
| | ) | |
| JAMIE CARTWRIGHT, | ) | Honorable |
| | ) | Carey C. Gill, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not err in granting the plaintiff's motion to stay the proceedings and compel arbitration of the defendant's counterclaim where the defendant's counterclaim was an arbitrable dispute as defined in the arbitration agreement and the plaintiff did not waive its right to compel arbitration. The circuit court's order to stay the proceedings and compel arbitration is affirmed.

¶ 2    The defendant, Jamie Cartwright, appeals from the circuit court's order granting a motion by the plaintiff, Credit Acceptance Corporation (Credit Acceptance), to stay the proceedings and compel arbitration of her counterclaim. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On August 6, 2021, Cartwright entered into a retail installment contract with Paducah Ford Lincoln Mazda Inc. (Paducah Ford), an auto dealership located in Paducah, Kentucky, for the purchase of a 2012 Nissan Maxima. That same day, Paducah Ford assigned its rights, title, and

1

interests in the installment contract and the Nissan vehicle to Credit Acceptance. In November 2022, Cartwright stopped making monthly payments in accordance with the terms of the installment contract. Subsequently, Credit Acceptance repossessed the vehicle and sold it, leaving a balance of $13,384.84 due under the installment contract.

¶ 5 On August 7, 2023, Credit Acceptance filed a complaint against Cartwright in the circuit court of Williamson County. Credit Acceptance alleged that Cartwright defaulted on an installment contract and owed the sum of $13,384.84, plus court costs and $350 in attorney fees. The initial hearing was held on October 4, 2023. Cartwright did not appear. Pursuant to Credit Acceptance's motion, the circuit court entered a default judgment against Cartwright. The court awarded $13,384.84, plus costs and $350 in attorney fees, to Credit Acceptance.

¶ 6 On November 21, 2023, Cartwright filed a petition to vacate the default judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)). Cartwright claimed that she had been unable to appear for the initial hearing because she had a debilitating medical condition. She further claimed that she had a "meritorious defense and counterclaim." She asserted that Credit Acceptance did not comply with section 3-114(f-5)(2) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/3-114(f-5)(2) (West 2022)), in that Credit Acceptance failed to send her an affidavit of defense form that she could fill out and return to Credit Acceptance, explaining her defense to the repossession of her vehicle. Credit Acceptance did not file a response to Cartwright's section 2-1401 petition.

¶ 7 On January 11, 2024, Cartwright filed a motion for default judgment based upon Credit Acceptance's failure to respond to her 2-1401 petition. On January 23, 2024, the parties filed a joint motion to vacate the default judgment that had been entered against Cartwright on October 4, 2023. They also asked the court to reinstate Credit Acceptance's complaint and to allow

Cartwright to file responsive pleadings. On January 24, 2024, the circuit court entered an order vacating the default judgment of October 4, 2023, reinstating Credit Acceptance's complaint, and granting Cartwright leave to file responsive pleadings.

¶ 8　On that same day, January 24, 2024, Cartwright filed an answer, affirmative defenses, and a putative class action counterclaim against Credit Acceptance. In the answer, Cartwright admitted that Credit Acceptance was the assignee of the installment contract between herself and Paducah Ford. She denied all other allegations regarding her default and the balance owed under the installment contract. As for affirmative defenses, Cartwright claimed that Credit Acceptance was barred from recovering any deficiency under the installment agreement because of (a) its failure to send her an affidavit of defense as required under section 3-114(f-5)(2) of the Vehicle Code, (b) its failure to comply with the "Uniform Commercial Code, 810 ILCS 5/9-601 – 5/9-625," and (c) the reasons set forth in the counterclaim which she incorporated by reference.

¶ 9　In the counterclaim, Cartwright alleged that Credit Acceptance's policies and practices regarding the repossession and sale of vehicles violated the Vehicle Code and subchapter 6 of article 9 of the Uniform Commercial Code (UCC).[1] Cartwright specifically alleged that section 3-114(f-5)(2) of the Vehicle Code required a lienholder to send an affidavit of defense form to the owner of a repossessed vehicle prior to the sale of that vehicle, and that Credit Acceptance violated section 3-114(f-5)(2) by engaging in a pattern and practice of not sending affidavit of defense forms to Cartwright and to other members of the putative class[2] following repossession of their vehicles. Cartwright further alleged that because Credit Acceptance failed to comply with section

---

[1]In a footnote in the counterclaim, Cartwright indicated that she cited to sections of the "official text of the UCC," and that article 9 of the UCC has been adopted in Illinois. See 810 ILCS 5/9-101 *et seq.* (West 2022).

[2]The class was comprised of "all persons (a) whose last known address at the time CAC repossessed collateral was in Illinois; (b) to whom CAC failed to mail an Affidavit of Defense after repossessing collateral; and (c) to whom CAC mailed a pre-sale or post-sale notice."

3-114(f-5)(2), its sale of her vehicle and the vehicles of class members was commercially unreasonable and violated UCC section 9-610 (810 ILCS 5/9-610 (West 2022)). She further alleged that Credit Acceptance's presale and post-sale notices were unreasonable, misleading, and violated UCC sections 9-611, 9-613, 9-614, and 9-616 (810 ILCS 5/9-611, 9-613, 9-614, 9-616 (West 2022)). Cartwright claimed that she and the members of the class suffered actual damages in a sum not less than the minimum damages provided in UCC section 9-625(c)(2) (810 ILCS 5/9-625(c)(2) (West 2022)), including damages for loss of use of tangible property and cost of alternative transportation; loss resulting from the inability to obtain, or increased costs of, alternative financing; harm to credit worthiness, credit standing, credit capacity, character, and general reputation; harm caused by defamation, slander, and liable; and harm caused by invasion of privacy. Cartwright sought an order certifying the class; an award of actual damages as provided in section 9-625(c)(2) of the UCC; statutory damages of $500 for each defective post-sale notice mailed; prejudgment and postjudgment interest, and attorney fees. Cartwright also sought declarations: (1) that Credit Acceptance's pattern and practice of failing to send affidavits of defense to her and other class members violated section 3-114(f-5)(2) of the Vehicle Code, and (2) that Credit Acceptance's presale and post-sale notices did not comply with statutory requirements.

¶ 10    On January 25, 2024, Credit Acceptance filed a motion to voluntarily dismiss its complaint against Cartwright, without prejudice. The circuit court granted the motion that same day, leaving only the counterclaim at issue. On February 1, 2024, Credit Acceptance filed a motion to dismiss or stay the proceedings in the circuit court and to compel arbitration of the counterclaim. Credit Acceptance alleged that it was the assignee of an installment contract executed by Cartwright and Paducah Ford, that the installment contract contained an arbitration clause, and that pursuant to

4

the terms of the arbitration clause, either party could invoke the right to arbitrate a dispute before or after a lawsuit had been started. A copy of the installment contract was attached in support of the motion to compel arbitration.

¶ 11 The installment contract is a five-page document. The arbitration clause is on page five of the contract. The opening paragraph of the arbitration clause provides, "This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial before a judge and/or jury." It further provides that the terms "We" and "Us" refer to the seller and or the seller's assignee, including Credit Acceptance Corporation, and that "You" and "Your" refer to the buyer.

¶ 12 The term "Dispute" is defined in the third paragraph of the arbitration clause. This paragraph also identifies certain disputes that are excluded from arbitration.

> "A 'Dispute' is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. 'Dispute' shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, 'Dispute' does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. 'Dispute' does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, 'dispute' does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence), all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

\* \* \*

5

> Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. ***"

The final paragraph of the arbitration clause indicates that the parties agreed that the installment contract "evidences a transaction in interstate commerce," and that the arbitration clause is "governed by the FAA and not by any state arbitration law."

¶ 13    On February 27, 2024, Cartwright filed a response in opposition to the motion to compel arbitration. Cartwright did not dispute the presence of the arbitration clause. Instead, she pointed to the following exclusion:

> " 'Dispute' does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind."

¶ 14    Cartwright argued that her counterclaim was a claim or controversy arising from Credit Acceptance's repossession and sale of her vehicle, and therefore, a controversy that fit within the above exclusion, referred to as the "repo and disposition exemption" to arbitration. Cartwright also argued, in the alternative, that Credit Acceptance waived its right to compel arbitration because it pursued judicial remedies in a manner inconsistent with its right to arbitrate. She noted that Credit Acceptance initiated a deficiency action and obtained a default judgment against her in the circuit court and subsequently agreed to an order vacating that judgment and allowing Cartwright to file responsive pleadings, all without asserting its right to compel arbitration.

¶ 15    In reply, Credit Acceptance argued that Cartwright's counterclaim did not fit within the "repo and disposition exemption." Credit Acceptance noted that the "repo and disposition exemption" was intended to preserve: (a) Credit Acceptance's right to the self-help remedies of

repossession and the sale of repossessed vehicles, and (b) a consumer's right to seek court-ordered injunctive relief to stop the repossession and sale, so long as the action did not include a claim for money damages. Credit Acceptance argued that the "repo and disposition exemption" was not a general exclusion for anything related to a repossession. It further argued that Cartwright's counterclaim was an action for money damages based on a violation of an Illinois statute. Therefore, the counterclaim fit within the broad definition of "dispute," and not the "repo and disposition exemption." Credit Acceptance rejected the contention that it waived its right to compel arbitration, arguing that it exercised its right to compel arbitration, without delay, after the counterclaim was filed. In response, Cartwright argued that the interpretation of the "repo and disposition exemption" advocated by Credit Acceptance did not conform to the plain language of the agreement and would require the court to rewrite the arbitration clause.

¶ 16    On April 17, 2024, the circuit court held a nonevidentiary hearing. After considering the pleadings and arguments of counsel, the court granted Credit Acceptance's motion to stay the proceedings and compel arbitration. The court found that the arbitration clause was not ambiguous, and that Cartwright's counterclaim was a "dispute" as defined by the plain language in the arbitration clause. The court further found that the counterclaim did not fit within the exclusion relating to repossession or sale of the vehicle, as the counterclaim went beyond the act of repossession or sale and was "more in the nature of" a dispute about Credit Acceptance's actions prior to repossession. In addition, the court found that under the circumstances of the case, Credit Acceptance had not waived its right to demand arbitration. The court reasoned that Credit Acceptance's default judgment had been vacated, that Credit Acceptance filed a motion to compel arbitration immediately after Cartwright filed the counterclaim, and that the arbitration clause

7

permitted both parties to request arbitration following the filing of a complaint or counterclaim. The court stayed the proceedings pending arbitration. Cartwright appealed.

¶ 17                                    II. ANALYSIS

¶ 18     An order granting or denying a motion to compel arbitration is injunctive in nature and appealable under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001). Generally, when an interlocutory appeal is brought under Rule 307(a)(1), the only issue is whether there was a showing sufficient to sustain the circuit court's order granting or denying the motion to compel arbitration. *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 229 (2009); *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002). When the circuit court issues its decision without an evidentiary hearing and without making factual findings, the standard of review is *de novo*. *Schmitz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 405 Ill. App. 3d 240, 244 (2010); *Travis*, 335 Ill. App. 3d at 1174. In this case, the circuit court granted the motion to compel arbitration based upon the pleadings, exhibits, declarations, and the presentations by counsel, and so our review is *de novo*.

¶ 19     Section 2-619(a)(9) of the Code allows for a dismissal of a claim or other appropriate relief, such as a stay of the proceedings, where the claim is barred by an affirmative matter that avoids the legal effect of or defeats a claim. 735 ILCS 5/2-619(a)(9) (West 2022). A motion to stay the proceedings and compel arbitration is essentially a section 2-619(a)(9) motion to stay an action in the trial court based on the exclusive remedy of arbitration. *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 21; *Travis*, 335 Ill. App. 3d at 1174. The moving party has the initial burden to establish that the parties have a valid agreement to arbitrate and that the controversy falls within the scope of the arbitration agreement. *Sturgill*, 2016 IL App (5th) 140380, ¶ 22. In ruling on a motion to compel arbitration pursuant to section 2-619, the circuit court must

8

construe all pleadings and supporting documents in a light most favorable to the nonmoving party. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004).

¶ 20    The arbitration clause at issue is governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2024)). Under the FAA, state courts and federal courts are authorized to stay an action and compel arbitration upon being satisfied that the issues involved are referable to arbitration under a written agreement to arbitrate. See 9 U.S.C. § 3 (2024). Section 2 of the FAA provides that a written agreement to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2024). The FAA reflects the fundamental principle that arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). An arbitration agreement is placed on the same footing as other contracts. Like any other contract, an arbitration agreement is a matter of consent, not coercion. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478-79 (1989). Arbitration is a way to resolve disputes, but only those disputes that the parties have agreed to arbitrate. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

¶ 21    Whether the parties to a dispute have contractually agreed to submit a dispute to arbitration is determined according to ordinary principles of state law governing contracts. *First Options*, 514 U.S. at 944. In this case, the installment contract provides that the terms of the agreement are governed "by the law of the state of the Seller's address shown on page 1 of this Contract, except to the extent preempted by applicable federal law." The address of the seller, Paducah Ford, is in Kentucky. Generally, an express choice of law provision will be honored, and the substantive law of the designated state will be applied. See *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 351 (2002). However, the law of the forum controls matters of procedure.

*Belleville Toyota*, 199 Ill. 2d at 351. Accordingly, the substantive law of Kentucky governs the interpretation of the arbitration clause at issue,[3] and Illinois law governs matters of procedure.

¶ 22    In interpreting an arbitration agreement, Kentucky courts apply the same fundamental principles of contract interpretation that would apply to any other contract. *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016). Therefore, review begins with an examination of the plain language in the arbitration clause at issue. *Kentucky Shakespeare Festival*, 490 S.W.3d at 694. In construing a contract, the primary objective is to ascertain and give effect to the intent of the parties as expressed in the written agreement. *Cantrell Supply, Inc. v. Liberty Mutual Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002). Courts will construe the contract as a whole, giving effect to all parts and every word, if possible. *Cantrell Supply*, 94 S.W.3d at 384-85. When a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding the execution of the contract, the subject matter, the objectives to be accomplished, and the conduct of the parties. *Cantrell Supply*, 94 S.W.3d at 385. Absent an ambiguity, a written contract will be enforced strictly according to its terms, and a court will interpret the terms by assigning language its ordinary meaning and without resort to extrinsic evidence. *Kentucky Shakespeare Festival*, 490 S.W.3d at 694; *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms. *Kentucky Shakespeare Festival*, 490 S.W.3d at 695. The party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. *Kentucky*

---

[3]The parties agree that the interpretation of the contract is governed by Kentucky law. The parties also agree that a choice of law analysis is unnecessary because there are little substantive differences between Kentucky law and Illinois law as to the issues raised in this appeal, and that application of relevant contract law of both states would essentially yield the same result.

10

*Shakespeare Festival*, 490 S.W.3d at 694. The interpretation of a contract presents a question of law that is reviewed *de novo*. *Kentucky Shakespeare Festival*, 490 S.W.3d at 695.

¶ 23   In this case, Cartwright contends that her counterclaim did not involve an arbitrable dispute as defined in the arbitration clause. She argues that the counterclaim fit within the "repo and disposition exemption."

¶ 24   The arbitration clause at issue defines "dispute" as "any claim or controversy between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, \*\*\* or any product or service included in this Contract." The arbitration clause provides that "dispute" will have "the broadest meaning possible," and that it includes "contract claims, and claims based in tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." Certain disputes are excluded from arbitration. The exclusion relied on by Cartwright provides:

> " 'Dispute' does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind."

¶ 25   In both the affirmative defenses and the counterclaim, Cartwright alleged Credit Acceptance engaged in a pattern and practice of not sending affidavit of defense forms to Cartwright and to other members of the putative class following repossession of their vehicles in violation of section 3-114(f-5)(2) of the Vehicle Code. Cartwright further alleged that because Credit Acceptance failed to comply with section 3-114(f-5)(2), its sale of the repossessed vehicles was commercially unreasonable and violated UCC section 9-610. Cartwright also alleged that

11

Credit Acceptance's presale and post-sale notices were commercially unreasonable, misleading, and violated article 9, part 6 of the UCC.[4]

¶ 26    Section 3-114(f-5) of the Vehicle Code provides that "in all cases wherein a lienholder has repossessed a vehicle by other than judicial process and holds it for resale under a security agreement," the lienholder is required to deliver or mail an affidavit of defense form to the vehicle owner. 625 ILCS 5/3-114(f-5)(2) (West 2022). The purpose of the affidavit of defense form is to allow the owner to inform the lienholder of any claimed defenses to repossession. If the owner returns the affidavit of defense to the lienholder in a timely manner, the lienholder is required to apply to a court to determine if the lienholder is entitled to possession of the vehicle. 625 ILCS 5/3-114 (West 2022).

¶ 27    The purpose of the UCC's presale notice requirement is to give a debtor sufficient time to protect his or her interest in the collateral by participating in the sale or to take appropriate steps to oppose the sale. See *Holt v. Peoples Bank of Mt. Washington*, 814 S.W.2d 568, 570-71 (Ky. 1991); *Nelson v. Monarch Investment Plan of Henderson, Inc.*, 452 S.W.2d 375, 377-78 (Ky. App. 1970). A secured party who fails to give the required presale notice denies the debtor an opportunity to assert defenses, contest the amount claimed, or pay the indebtedness prior to the sale of the collateral. *Holt*, 814 S.W.2d at 571. When notice is omitted, the principle of estoppel prevents recovery of any deficiency judgment. *Holt*, 814 S.W.2d at 571.

¶ 28    Cartwright's counterclaim alleges that Credit Acceptance failed to provide proper notice to owners that their repossessed vehicles were about to be sold and that Credit Acceptance failed to follow commercially reasonable practices in disposing of those vehicles. The allegation that

---

[4]Kentucky codified the UCC provisions regarding default and enforcement of security interests. See Ky. Rev. Stat. Ann. § 355.9-601 *et seq.* (West 2022).

Credit Acceptance failed to comply with statutory requirements governing the sale of the repossessed vehicles is a dispute that is premised on the "repossession" and the "exercise of the power of sale" of repossessed vehicles. Here, however, Cartwright sought monetary relief in the form of actual damages, statutory damages, and other appropriate damages, as well as declaratory relief. The "repo and disposition exemption" does not apply to actions involving "a request for monetary relief of any kind." Given the request for monetary relief, Cartwright's contention that her counterclaim is excluded from arbitration based on the "repo and disposition exemption" is without merit. The counterclaim is an arbitrable dispute as defined in the arbitration clause.

¶ 29    Next, we consider Cartwright's contention that Credit Acceptance waived its right to arbitration. Both Illinois and Kentucky recognize that a party may waive the right to arbitrate when its conduct is inconsistent with the arbitration clause, thereby creating a reasonable inference that it has voluntarily relinquished or abandoned the right to arbitrate. See *Midland Funding LLC v. Hilliker*, 2016 IL App (5th) 160038, ¶ 27; *American General Home Equity, Inc. v. Kestel*, 253 S.W.3d 544, 554 (Ky. 2008). Under Kentucky law, a waiver of arbitration rights may be express or implied, but the waiver will not be inferred lightly. *Kestel*, 253 S.W.3d at 554. Waiver will be found where the party seeking the right to compel arbitration has invoked the judicial process and substantially participated in the litigation to a point inconsistent with the intent to arbitrate. *Kestel*, 253 S.W.3d at 554; *Midland Funding*, 2016 IL App (5th) 160038, ¶ 27. The court's task is to determine whether the party seeking arbitration has acted in a manner inconsistent with the intent to arbitrate based upon all of the facts and circumstances presented in the particular case. *Kestel*, 253 S.W.3d at 556. Where, as here, the facts are undisputed, and we are reviewing the circuit court's application of the facts and law, the question of whether the right to compel arbitration has

13

been waived is a legal one, subject to *de novo* review. *LAS, Inc. v. Mini-Tankers, USA, Inc.*, 342 Ill. App. 3d 997, 1001 (2003); *Kestel*, 253 S.W.3d at 553.

¶ 30     In this case, Credit Acceptance filed a deficiency action in the circuit court and thereafter obtained a default judgment when Cartwright failed to appear. Pursuant to an agreement between the parties, the circuit court vacated the default judgment, reinstated Credit Acceptance's original complaint, and permitted Cartwright to file responsive pleadings. Shortly after Cartwright filed her answer and counterclaim, Credit Acceptance voluntarily dismissed its complaint without prejudice and then filed its motion to compel arbitration. Up to that point in the proceedings, Credit Acceptance had not placed any substantive issues before the circuit court for resolution and no trial date had been set. Credit Acceptance did not waive its right to compel arbitration by filing a deficiency action because that action was permitted under the "repo and disposition exemption." In addition, Credit Acceptance filed its motion to compel arbitration very quickly after Cartwright filed her counterclaim. Again, this action was pursuant to a provision in the arbitration clause that allowed a party to demand arbitration either before or after a lawsuit has been started. After considering the facts and circumstances presented, we do not find that Credit Acceptance waived its right to arbitrate. Credit Acceptance's conduct was not so clearly inconsistent with its assertion of its arbitration rights as to demonstrate an abandonment of the contractual right to arbitrate.

¶ 31                                    III. CONCLUSION

¶ 32     For the reasons stated, we find that Cartwright's counterclaim was an arbitrable dispute as defined in the parties' arbitration clause and that Credit Acceptance did not waive its right to compel arbitration. Accordingly, the circuit court's decision to stay the proceedings and compel arbitration of the counterclaim is affirmed.

¶ 33     Affirmed.

14