RENDERED: NOVEMBER 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1449-MR

STEPHEN E. DIEBOLD          APPELLANT

v.        APPEAL FROM JEFFRSON CIRCUIT COURT
HONORABLE ANNIE O'CONNELL, JUDGE
ACTION NO. 18-CI-003303

MARY JANE DIEBOLD,
INDIVIDUALLY AND AS
SUCCESSOR AND
ADMINISTRATRIX OF THE
ESTATE OF THOMAS DIEBOLD          APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CETRULO, KAREM, AND MOYNAHAN, JUDGES.

KAREM, JUDGE: Stephen E. Diebold ("Stephen") appeals from a Jefferson

Circuit Court order denying his motion for summary judgment and granting

judgment on the pleadings to Mary Jane Diebold, individually and in her capacity

as successor administratrix of the Estate of Thomas C. Diebold, and the Estate of Thomas C. Diebold ("Mary and the Estate" or "the appellees"). The case arose from a dispute over the valuation and tax consequences of Stephen's purchase of Thomas's shares, following Thomas's death, in two limited liability companies. In a previous appeal, a panel of this Court held that a release provision in the purchase agreement barred Mary's and the Estate's claims against Stephen. *See Diebold v. Diebold*, No. 2020-CA-0051-MR, 2022 WL 3129784 (Ky. App. Aug. 5, 2022). The sole issue in the present appeal is whether Stephen is entitled to recover attorney's fees and costs under the terms of that agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

Stephen and his late brother Thomas were members of two Kentucky limited liability companies. *Id.* at *1. On March 22, 2005, they entered into a Buy-Sell Agreement, which provided that upon the death of Stephen or Thomas, the deceased member's estate would be required to sell the deceased's ownership interests in both LLCs to the surviving member. *Id.* "The Buy-Sell Agreement included a formula for valuing the deceased members' ownership interests sold thereunder." *Id.*

Thomas died in 2014, and Stephen bought his shares in the LLCs in 2015, pursuant to an agreement ("the Purchase Agreement") he signed with the Mary and the Estate. The Purchase Agreement incorporated the formula in the

Buy-Sell Agreement to value Thomas's ownership interests in the LLCs. *Id.* The Purchase Agreement contained a broad release of liability ("the Release") between the parties, as well as an indemnification provision.

After the Estate filed a tax return, it was audited by the IRS, which determined that the price Stephen paid for the LLC shares was below fair market value. *Id.* The Estate reached a settlement with the IRS, resulting in an additional $1.4 million in taxes on the Estate. The Estate was able to use an estate tax exemption to pay this amount, but it had the effect of reducing the total tax exemption available to Mary. *Id.*

According to Stephen, Mary and the Estate demanded that he compensate them for the difference between what he paid for the LLC shares and their fair market value and/or for the additional taxes paid by the Estate. On June 8, 2018, Stephen filed a petition for declaratory judgment, arguing that (1) any claims of this type were barred by the Release contained in the Purchase Agreement; and (2) if the Estate or Mary asserted any claims against him, it would constitute a breach of the Release and would entitle him to indemnification for his attorney's fees and costs under the indemnification provision, Section 9.2, of the Agreement. *Id.* Count IV of his petition stated:

> If MJ Diebold or the Estate asserts any claim against Petitioner, it would constitute a breach of the Release provision of the Purchase Agreement. As a result, Petitioner would be entitled to indemnification under

Section 9 of the Purchase Agreement by MJ Diebold and the Estate for any expenses, including without limitation, taxes and attorneys' fees, incurred in defense of the claims.

Petitioner requests a declaration by this Court that (i) if MJ Diebold or the Estate asserts any claim or action against Petitioner, it would constitute a breach of the Purchase Agreement; and (ii) in such case, Petitioner is entitled to indemnification, including its attorneys' fees incurred in defending such actions, pursuant to Section 9 of the Purchase Agreement.

Mary and the Estate filed a response and several counterclaims. The counterclaims sought reformation and/or rescission of the Purchase Agreement based upon mutual or unilateral mistake and reimbursement in full by Stephen for the difference between the amount he paid for the shares and their value as determined by the IRS, as well as the additional taxes; rescission of the Purchase Agreement based on constructive fraud committed by Stephen; and indemnification from Stephen for the tax impact of the purchase.

Stephen filed a motion for judgment on the pleadings. On December 20, 2019, the circuit court entered an opinion and order granting Stephen's motion and dismissing the Estate and Mary's counterclaims. The circuit court determined that Stephen owed no fiduciary duty to Mary and that the Release in the Purchase Agreement barred the Estate and Mary's other counterclaims against Stephen. *Id.*

On January 2, 2020, Stephen filed a motion for an award of attorney's fees and costs, arguing that "the Estate and Mary breached the Purchase

Agreement by bringing the counterclaims, thus entitling Stephen to attorney's fees and costs per Section 9.2 [the indemnification provision] of the Purchase Agreement." *Id*. at *4.

A few days later, the Estate and Mary filed a notice of appeal from the December 20, 2019, opinion and order. Stephen moved to dismiss the appeal, arguing that it was interlocutory because the court had not yet decided his claim for indemnification under Section 9.2. The circuit court entered an order holding the case in abeyance until this Court ruled on the motion to dismiss the appeal. The Court of Appeals denied the motion to dismiss in an order entered on May 20, 2020.

On September 9, 2020, the circuit court entered an order denying Stephen's motion for attorney's fees and costs on the grounds that it no longer had jurisdiction over the matter because the case was before the Court of Appeals.

On August 5, 2022, a panel of this Court held that the December 20, 2019 opinion and order granting judgment on the pleadings was not interlocutory and had fully adjudicated the Estate and Mary's claims against Stephen. It affirmed the circuit court's opinion and order, which it treated as a summary judgment, on the grounds (1) that the claim that Stephen breached his fiduciary duty to the Estate was unsupported by any material issue of fact and (2) the claims of mutual mistake, unilateral mistake, and indemnification all came within the

ambit of the Release. After resolving the substantive issues, the Court stated: "As we have resolved the parties' appeals, the circuit court may now reach the merits of Stephen's indemnification claim for attorney's fees and costs under the Purchase Agreement." *Id*. at *8.

Accordingly, Stephen thereafter filed a motion for summary judgment on his Count IV claim for attorney's fees and costs. The circuit court entered an order on November 27, 2024, denying the motion and granting judgment on the pleadings to Mary and the Estate. Its order states in pertinent part:

> Because [Stephen's] Count IV claim is for breach of contract and his damages are [for] recovery of attorney's fees, he has no compensable injury. In Kentucky[,] case law does not permit compensatory damages for breach of contract. *Mo-Jack Distributor, LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 906 (Ky. App. 2015).
>
> Based on the above, the Court finds as a matter of law that [Stephen's] Count IV has not demonstrated a breach of contract as required by Article 9 of the Purchase Agreement and that [Mary and the Estate] filing a Response and Counter Declaration of Rights to [Stephen's] Declaration of Rights does not constitute a breach of the Purchase Agreement.

This appeal by Stephen followed.

## STANDARD OF REVIEW

A judgment on the pleadings is a question of law which is subject to *de novo* review. *Russell v. Johnson & Johnson, Inc.*, 610 S.W.3d 233, 238-39 (Ky. 2020).

-6-

The construction and interpretation of a contract, such as the Purchase Agreement, is also a matter of law, which is reviewed *de novo* without deference to the trial court's interpretation. *Spot-A-Pot, Inc. v. State Resources Corp.*, 278 S.W.3d 158, 161 (Ky. App. 2009) (citations omitted). "Judicial review of a contract begins with examination of the plain language of the instrument." *Mostert v. Mostert Group, LLC*, 606 S.W.3d 87, 91 (Ky. 2020). "In the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) (internal quotation marks and citation omitted). A contract "must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986).

## ANALYSIS

Stephen argues that he is entitled to recover his attorney's fees and costs under the indemnification provision of the Purchase Agreement because Mary and the Estate breached the Release by filing claims against him.

Section 9.2 (the Indemnification Provision) of the Purchase Agreement states in pertinent part as follows:

> **9.2 Indemnification and Payment of Damages** by
> Seller and Mary Jane Diebold

(a) Subject to the limitations set forth in Section 9.4 below, Seller . . . shall indemnify and hold Buyer and his affiliates, successors, and assigns (collectively, "Buyer Indemnitees") harmless from and against and shall pay to the Buyer Indemnitees the amount of all losses, damages, claims, liabilities, demands, assessments, costs and other expenses (including reasonable attorneys' and accounting fees collectively, "Losses"), arising indirectly or indirectly, from or in connection with:

(1) any breach of any representation or warranty made by Seller in this Agreement; or

(2) any breach by seller of any covenant, agreement, or obligation of Seller in this Agreement.

Section 6.1 ("the Release") of the Purchase Agreement states as follows:

**6.1 Release of Buyer and Companies**. Except for the covenants and obligations arising under this Agreement, each of Seller [the Estate] for itself and Mary Jane Diebold, for herself, and their respective affiliates, members, successors and assigns, and for all other persons or entities claiming by, through or under Seller, hereby fully and forever remises, releases, acquits and discharges each of the Companies and Buyer [Stephen] and their respective managers, members, directors, officers, employees, agents, representatives, heirs, successors and assigns (each a "Released Party" and collectively, the "Released Parties") and each of them of and from any and all manner of actions, causes of action, suits, sums of money, accounts, reckonings, covenants, controversies, agreements, promises, damages, judgments, proceedings, executions, debts, obligations, liabilities, liens security interests, claims and demands of any nature whatsoever, whether at law, in equity or otherwise, whether in tort, contract or otherwise, whether pursuant to any statute, ordinance, regulation, rule of common law or otherwise, whether direct or indirect, whether punitive or compensatory, whether known or

unknown, whether presently discoverable or undiscoverable, whether suspected or claimed, and whether fixed, contingent or otherwise, which Seller or Mary Jane Diebold ever had, now has or may have against any Released Party, based in whole or in part on any contract, agreement, arrangement, commitment, loan, advance, offer, facts, conduct, activities, omissions, transactions, events or circumstances, whether known or unknown, which may now exist or which may have existed, occurred, happened, arisen or transpired at any time prior to or on the date hereof.

Stephen argues that the appellees' counterclaims in the declaratory judgment action constituted a breach of the Release, as determined in the first appeal, which held that the Release was valid, and that claims made by Mary and the Estate of mutual mistake, unilateral mistake, and indemnification came within the ambit of the Release. Consequently, under the Indemnification Provision in Section 9.2(a)(2), he contends they were required to pay his attorney's fees and costs.

A release is defined under Kentucky law as:

[A] private agreement amongst parties which gives up or abandons a claim or right to the person against whom the claim exists or the right is to be enforced or exercised. That is to say, a release is a surrender of a claimant's right to prosecute a cause of action. In Kentucky, a release is viewed as a contract between the party executing the release and the party being released.

*Waddle v. Galen of Kentucky, Inc.*, 131 S.W.3d 361, 364-65 (Ky. App. 2004) (internal quotation marks and citations omitted).

-9-

The Release in the Purchase Agreement was an "agreement," which places it squarely within the purview of Section 9.2(a)(2) of the Indemnification Provision, which provides for the payment of attorney's fees and costs for "any breach by seller of any covenant, **agreement**, or obligation of Seller in this Agreement." (Emphasis supplied.)

The circuit court rejected Stephen's claim on the grounds that attorney's fees are not recoverable as damages for breach of contract, in reliance on *Mo-Jack*, 476 S.W.3d 900. But *Mo-Jack* states, "in the absence of a statute **or contract** expressly providing therefor, attorney fees are not allowable as costs, nor recoverable as an item of damages." *Id.* at 906 (quoting *Cummings v. Covey,* 229 S.W.3d 59, 61 (Ky. App. 2007)) (emphasis supplied). "[W]ith the exception of a specific contractual provision allowing for recovery of attorneys' fees or a fee-shifting statute, . . . each party assumes responsibility for his or her attorneys' fee[s]." *Id.* (quoting *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 842 (Ky. 2005)). The circuit court's reliance on *Mo-Jack* was misplaced because a specific contractual provision, Section 9.2 of the Purchase Agreement, expressly provides for attorney's fees. Under the plain terms of the Purchase Agreement, Stephen is entitled to recover his attorney's fees and costs if the appellees' counterclaims breached the terms of the Release.

The appellees contend, however, that their counterclaims against Stephen could not constitute a breach of the Release due to the unique nature of declaratory judgment actions. "A true declaratory judgment proceeding . . . is to determine legal rights **before** one person has wronged another." *Bowles v. Stilley's Ex'r*, 254 S.W.2d 504, 505 (Ky. 1953) (emphasis added). They contend that simply seeking a declaration of rights could not constitute a breach of the Release and, if it did, Stephen breached first by filing his petition for declaratory relief. But when a party files counterclaims alleging past misconduct and seeking damages, as Mary and the Estate did, the declaratory judgment is converted from an action for solely declaratory relief into an action at law. In *Commonwealth v. Givens*, the Commonwealth asked for a declaration of rights regarding the respective interests of the state and a property owner, Marian Jackson Givens, in some land intended for a park. 299 S.W.2d 799, 802 (Ky. 1957). Mrs. Givens responded with an answer and counterclaim to the Commonwealth's petition. The Court described the prior action as a purely declaratory proceeding,

> [b]ut, when Mrs. Givens filed her answer and especially her counterclaim to the complaint in that suit, she changed the whole nature of the litigation by transforming it into an action wherein she sought general relief. In short, she not only asserted a claim for a division of the property and for an allotment unto her of her share thereof but she made demand additionally for every species of damages that then occurred to her by reason of the Commonwealth's alleged misappropriation of her property.

-11-

The Court further stated:

> It is true of course that where the prior action was one merely for declaratory relief, brought for the prime purpose of furnishing the parties guidance for their future actions, the judgment in such a case does not bar a party from thereafter obtaining additional special relief arising out of the same controversy. This Court, however, has many times held that where the pleadings filed and the practice resorted to by the parties have in reality converted the case into an ordinary action at law or suit in equity, even if the cause was originally commenced and labeled as one seeking a declaration of rights, the courts will treat the litigation as an ordinary action or an equitable one, as the case may be.

*Id.* (citations omitted).

Mary and the Estate argue that they had to file their counterclaims because they were mandatory under Kentucky Rules of Civil Procedure (CR) 13.01 and would otherwise have been waived. Essentially, they complain that Stephen preemptively sought to declare a breach if the appellees filed counterclaims to his petition. The appellees contend that this anticipatory tactic subverts the purpose of the Declaration of Rights Act and their right to state and place the actual controversy in issue and seek the relief requested.

> It is the settled law in Kentucky that one who signs a contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions, unless he is misled as to the nature of the writing which he signs or his signature has been obtained by fraud.

*Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959).

The appellees do not claim they were unaware of the terms of the Purchase Agreement, including the Release. They nonetheless chose to file the counterclaims, knowing they risked being held responsible for Stephen's legal fees.

The appellees further argue that Stephen's claim for attorney's fees is precluded by a limitations period found in Section 9.1 of the Purchase Agreement, which states: "All representations, warranties, covenants and obligations in this Agreement shall survive the Closing for a period of one (1) year from the effective date of this Agreement."[1] They assert the right to recovery had expired long before Stephen filed his petition for a declaratory judgment in 2018. Kentucky Rule of Civil Procedure (CR) 8.03 requires a party to "set forth affirmatively . . . statute of limitations . . . and any other matter constituting an avoidance or affirmative defense." We see no reason that a contractual limitations period would not also be an affirmative defense subject to the same pleading requirements. The appellees have not indicated when or how this affirmative defense was pled as required under CR 12.02 or how this defense was preserved as required by Kentucky Rules of Civil Procedure 32(B)(3) and (4). Consequently, the defense is waived. *Commonwealth, Dep't of Highways v. Chinn*, 350 S.W.2d 622, 623 (Ky. 1961).

---

[1] The Purchase Agreement was executed on June 18, 2015. The appellees' brief states that the effective date of the Purchase Agreement was June 30, 2014.

Next, the appellees argue that Section 9.2 provides indemnification rights for attorney's fees only for breach of representations and warranties under Section 4.6 and for breach of a confidentiality covenant in Paragraph 7 and a cooperation obligation in Paragraph 8. They contend that Stephen did not plead a breach of any of these. The Release constitutes an agreement, and the plain language of Section 9.2(2) provides indemnification for the breach of an agreement.

The appellees further contend that an opinion cited by Stephen, *Middleton v. Commonwealth Bank and Trust Company*, No. 2021-CA-1035-MR, 2023 WL 3667587 (Ky. App. May 26, 2023), *review denied* (Dec. 6, 2023), is not pertinent to the facts of this case. As we have already resolved the substantive issues raised in this appeal, we need not consider *Middleton* in that context.

Finally, the appellees argue that if the case is remanded, they are entitled to a jury trial to determine whether there was indeed a breach of contract. In its prior opinion, this Court held that the appellees violated the Release by bringing their claims. It states as follows:

> It is said that "a release is a discharge of a claim or obligation and surrender of a claimant's right to prosecute a cause of action." *Frear v. P.T.A. Idus., Inc.*, 103 S.W.3d 99, 107 (Ky. 2003). Stated differently, a release constitutes a "private agreement amongst parties which gives up or abandons a claim or right." *Id.* As a release is a contract, it "will be strictly enforced according to its terms absent ambiguity." *Grass v. Akins*, 368 S.W.3d

-14-

150, 153 (Ky. App. 2012). And, the interpretation of a contract presents an issue of law for the court. *Frear*, 103 S.W.3d at 105.

> The terms of the above release are unambiguous and broad. Thereunder, the Estate and Mary released all known or unknown claims, causes of action, covenants, liability, and demands against Stephen based upon contract, agreement, conduct, omission, or transaction that existed or may have existed prior to or at the time of the Purchase Agreement. This broad release plainly includes the Estate and Mary's claims of mutual/unilateral mistake and indemnification for the additional gift tax incurred by the Estate. Therefore, we conclude that the Estate and Mary's claims against Stephen are barred by the release contained in the Purchase Agreement.

*Diebold*, 2022 WL 3129784, at *7.

This passage in the Court's prior Opinion characterized the Release as a contract and determined it had been breached. This holding has become the law of the case. "[I]f an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case." *Puckett v. Cabinet for Health and Family Services*, 621 S.W.3d 402, 409 (Ky. 2021) (quoting *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982)).

Finally, the appellees argue that Stephen is not entitled to collect attorney's fees because his claim is for compensatory damages for breach of

-15-

contract. We reiterate that his claim is not one for damages stemming from a breach of contract; rather, he is entitled to recover attorney's fees and costs under the specific terms of Section 9.2. A jury trial is not required because "[w]hat constitutes a reasonable attorney fee is an issue of [law] when the . . . client seeks to recover a reasonable attorney fee from an opposing or third party." *Inn-Group Management Services, Inc. v. Greer*, 71 S.W.3d 125, 130 (Ky. App. 2002). The reasonableness of an attorney's fees is "within the sound discretion of the trial court and will not be disturbed "[a]bsent a showing of an abuse of that discretion." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 787 (Ky. 2017) (quoting *Woodall v. Grange Mut. Cas. Co.*, 648 S.W.2d 871, 873 (Ky. 1983)).

## CONCLUSION

For the foregoing reasons, the order of the Jefferson Circuit Court is reversed, and the case is remanded for further proceedings to award attorney's fees and costs to Stephen.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Janet P. Jakubowicz
Benjamin J. Lewis
Aaron W. Marcus
Louisville, Kentucky

BRIEF FOR APPELLEES:

Charles G. Middleton III
Louisville, Kentucky